1  RAFFI KHATCHADOURIAN (SBN 193165)
   **HEMAR, ROUSSO & HEALD, LLP**
2  15910 Ventura Boulevard, 12th Floor
   Encino, California  91436
3  Telephone:    (818) 501-3800
   Facsimile:     (818) 501-2985
4

5  Attorneys for Objecting Secured Creditor,
   WELLS FARGO BANK, NATIONAL ASSOCIATION
6

7

8              **UNITED STATES BANKRUPTCY COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10                 **LOS ANGELES DIVISION**

11  In re                          )    Case No. 2:14-24711-ER
                                   )
12                                 )    Chapter 11
    BRAUN DEVELOPMENT GROUP, INC., )
13                                 )    **OPPOSITION TO DEBTOR'S NOTICE OF**
                                   )    **MOTION AND EMERGENCY MOTION**
14            Debtor.              )    **FOR USE OF CASH COLLATERAL;**
                                   )    **MEMORANDUM OF POINTS AND**
15                                 )    **AUTHORITIES AND DECLARATION OF**
                                   )    **ROBERT TURNER IN SUPPORT**
16  _____  )    **THEREOF**

17                                      Hearing
                                        Date:        October 18, 2014
18                                      Time:        10:00 a.m.
                                        Judge:       Hon. Ernest M. Robles
19                                      Courtroom:   1568
                                        Floor:       15th
20

21         **TO THE COURT AND ALL INTERESTED PARTIES:**

22         Secured Creditor WELLS FARGO BANK, NATIONAL ASSOCIATION hereby opposes

23  Debtor's Emergency Motion for an Order Authorizing Use of Cash Collateral, as follows:

24                               **I.**

25                    **STATEMENT OF FACTS**

26         On or about December 26, 2006, Wells Fargo and Debtor BRAUN DEVELOPMENT

27  GROUP, INC. ("Debtor") entered into a Commercial Security Agreement and Promissory Note

28  (sometimes collectively referred to herein as the "Loan"), whereby Debtor borrowed and promised

1  to pay to Wells Fargo the principal sum of $546,800.00, together with interest at a variable rate, as

2  stated in the Promissory Note therein.  True and correct copies of the Commercial Security

3  Agreement and Promissory Note are attached to the Declaration of Robert Turner as Exhibits "1"

4  and "2," respectively, and incorporated herein by reference.

5          The balance due pursuant to the Loan is $160,467.03 as of August 15, 2014.  The principal

6  and interest payment on the Loan is currently $6,100.77.  The Loan is currently due for the August

7  15, 2014, principal and interest payment.

8          The Commercial Security Agreement pledged all of Debtor's tangible and intangible

9  business assets as collateral for the Loan.  Wells Fargo perfected a first priority security interest in

10  the Collateral on account of the Loan by filing a UCC-1 Financing Statement with the California

11  Secretary of State.  A true and correct copy of the UCC-1 Financing Statement is attached to the

12  Declaration of Robert Turner as Exhibit "3," and incorporated herein by reference.  A true and

13  correct copy of the UCC-1 Continuation Statement filed by Wells Fargo is attached to the

14  Declaration of Robert Turner as Exhibit "4," and incorporated herein by reference.

15          On or about February 6, 2007, Wells Fargo and Debtor entered into a Line of Credit

16  Agreement and Security Agreement (hereinafter collectively the "Line of Credit"), whereby Debtor

17  borrowed and promised to pay to Wells Fargo the principal sum of $100,000.00, together with

18  interest at a variable rate, as stated in the Line of Credit.  Wells Fargo will provide copies of the

19  Line of Credit documents to the Court upon receipt from its records department.

20          The balance due pursuant to the Line of Credit is $50,267.23 as of August 15, 2014.  The

21  principal and interest payment on the Line of Credit is currently $1,939.00.  The Line of Credit is

22  current, with the next principal and interest payment due on August 22, 2014.

23          The Commercial Security Agreement pledged all of Debtor's tangible and intangible

24  business assets as collateral for the Line of Credit.  Wells Fargo perfected a second priority security

25  interest in the Collateral on account of the Line of Credit by filing a UCC-1 Financing Statement

26  with the California Secretary of State.  A true and correct copy of the UCC-1 Financing Statement is

27  attached to the Declaration of Robert Turner as Exhibit "5," and incorporated herein by reference.

28  A true and correct copy of the UCC-1 Continuation Statement filed by Wells Fargo is attached to

1   the Declaration of Robert Turner as Exhibit "6," and incorporated herein by reference.

2        Wells Fargo is informed and believes that other creditors listed by Debtor in its Motion have

3   a security in the cash collateral, which is thus over-encumbered.  True and correct copies of the

4   UCC-1 Continuation Statements filed by the junior creditors are attached to the Declaration of

5   Robert Turner collectively as Exhibit "7," and incorporated herein by reference.

6        Wells Fargo does not consent to the use of its cash collateral pursuant to the Debtor's

7   proposed budget, as Debtor is proposing to pay Wells Fargo only $3,000.00 out of its cash

8   collateral, presumably solely on account of the Loan, while giving preferential treatment to its

9   counsel, insiders and officers.

10

**II.**

11

**LEGAL ARGUMENT**

12   **A.**    **Use of Collateral Is Governed Strictly Under the Code:**

13        Pursuant to 11 U.S.C. § 363(c)(1), the Debtor is authorized to operate its business.

14   However, pursuant to Section 363(c)(2), the debtor in possession may not use cash collateral unless

15   each entity that has an interest in the cash collateral consents or the court, after notice and a hearing,

16   authorizes such use in accordance with the provisions of Section 363 of the Code.

17        Section 363(c)(e) provides that, at any time, on request of an entity that has an interest in

18   property proposed to be used, the court shall prohibit or condition such use as is necessary to

19   provide adequate protection of such interest.  Section 363(p)(1) provides that in any hearing under

20   Section 363, the debtor in possession has the burden of proof on the issue of adequate protection.

21   **B.**    **Adequate Protection:**

22        Adequate protection is defined under Section 361 to include a debtor providing a cash

23   payment or periodic cash payments to the secured party to the extent that the use of the property

24   results in a decrease in the value of the creditor's interest in the property; providing an additional or

25   replacement lien to the extent that the use results in a decrease in the value of the creditor's interest

26   in the property; or giving such other relief as will result in the realization by the creditor of the

27   "indubitable equivalent" of the creditor's interest in the property.

28   \\\

1       Although "adequate protection" is not defined in the Code, Section 361 provides illustrative

2    examples of adequate protection, specifically that the debtor may give cash, additional or

3    replacement liens, or other relief that will result in the indubitable equivalent of the objecting party's

4    interest in such property. 11 U.S.C. § 361.  In other words, if the debtor's proposed protections do

5    not adequately preserve the creditor's interest in the cash collateral as it existed on the petition filing

6    date, then the creditor is not adequately protected. *Lend Lease v. Briggs Transp. Co.* (*In re Briggs*

7    *Transp. Co.*), 780 F.2d 1339 (8th Cir. 1985).  Thus, the Court may not authorize use of cash

8    collateral without running afoul of the secured creditor's Fifth Amendment property right to a just

9    compensation for a taking. See, *Wright v. Union Cent. Life Ins. Co.*, 311 U.S. 273, 61 S. Ct. 196, 85

10   L. Ed. 184 (U.S. 1940); *In re Carbone Cos.*, 395 B.R. 631, 635 (Bankr. N.D. Ohio 2008).

11   "'Indubitable' means `too evident to be doubted.'"  *In re Arnold & Baker Farms*, 85 F.3d 1415,

12   1421 (9th Cir. 1996) (quoting *In re Arnold & Baker Farms*, 177 B.R. 648, 661-62 (9th Cir. BAP

13   1994) (citation omitted)).  "[T]o the extent a debtor seeks to alter the collateral securing a creditor's

14   loan, providing the `indubitable equivalent' requires that the substitute collateral not increase the

15   creditor's risk exposure." *In re Keller*, 157 B.R. 680, 683-84 (Bankr. E.D. Wash. 1993); *In re Pac.*

16   *Lifestyle Homes, Inc.*, 2009 Bankr. LEXIS 711 (Bankr. W.D. Wash. Mar. 16, 2009).  In this case,

17   Debtor cannot offer Wells Fargo its indubitable equivalent, since he has no resources to do so.

18       In determining value, courts have considered adequate protection a concept which is to be

19   decided flexibly on a case by case basis.  This flexibility, however, must not operate to the detriment

20   of the secured creditor's interest. In any given case, the bankruptcy court must necessarily (1)

21   establish the value of the secured creditor's interest, (2) identify the risks to the secured creditor's

22   value resulting from the debtor's request for use of cash collateral, and (3) determine whether the

23   debtor's adequate protection proposal protects value against risks to that value consistent with the

24   concept of indubitable equivalence. *In re Bear River Orchards*, 56 B.R. 972, 978 (Bankr.E.D.Cal.,

25   1986).  In determining whether a creditor's secured interests are so protected, there must be an

26   individual determination of the value of that interest and whether a proposed use of cash collateral

27   threatens that value. *In re George Ruggiere Chrysler-Plymouth, Inc.*, 727 F.2d 1017, 1019 -1020

28   (11th Cir. 1984); *Martin v. U.S. Commodity Credit Corp.* (*In re Martin*), 761 F.2d 472, 476-77 (8th

1   Cir.1985); *In re Dynaco Corp.*, 162 B.R. 389 (Bankr.D.N.H.1993); *In re Weiser*, 74 B.R. 111, 115

2   (Bankr.S.D.Iowa 1986); *In re Gallegos Research Group, Corp.*, 193 B.R. 577, 584 (Bkrtcy.D.Colo.,

3   1995).

4           Where the Debtor can point to no possible additional source from which it could make cash

5   payments, other than from the proceeds upon which the lender already holds first liens, or offer

6   other unencumbered property that could be used to provide "an additional or replacement lien" to

7   the lender, there is no adequate protection. *In re Pac. Lifestyle Homes, Inc.*, 2009 Bankr. LEXIS

8   711 (Bankr. W.D. Wash. Mar. 16, 2009).

9           In other words, none of the elements under 11 U.S.C. §§ 361 or 363 have been presented,

10  much less met, and no use of cash collateral is authorized or justified.

11  **C.      Wells Fargo Is Entitled to Full Adequate Protection Payments Because it Has Cause**

12          **for Relief from the Automatic Stay**

13          The Debtor is not offering to make full principal and interest payments to Wells Fargo

14  pursuant to the Loan, and is not offering to make any adequate protection payments pursuant to the

15  Line of Credit.  Debtor has only offered to pay $3,000.00 to Wells Fargo instead of the combined

16  $8,039.77 principal and interest owing pursuant to the Loan and the Line of Credit.

17          Section 362(d)(1) of the Bankruptcy Code allows a creditor to seek relief from stay "for

18  cause, including the lack of adequate protection of an interest in property of such party in interest."

19  The facts of this case demonstrate that if such relief were to be sought by Wells Fargo, the automatic

20  stay should be lifted "for cause."  The Bankruptcy Code mandates that secured creditors must, at a

21  minimum, be afforded a reasonable assurance that the value of their security interests in property of

22  a debtor is and will continue to be "adequately protected" by the debtor. *Metropolitan Life Ins. v.*

23  *Murel Holding Corp.,* 75 F.2d 941 (2nd Cir. 1935).

24          The debtor bears the burden of proving that the creditor's interest in the property is

25  adequately protected. *Guavin v. Wagner*, 24 B.R. 578, 580 (9th Cir. BAP 1982).  If the Debtor fails

26  to meet this burden, the creditor is entitled to relief under §362(d)(1). *In re Winslow Center*

27  *Associates*, 32 B.R. 685, 687 (Bankr. E.D. Pa. 1983).  This Debtor has failed to provide evidence of

28  value to demonstrate that Wells Fargo is adequately protected by the Collateral.  Specifically, the

1   Debtor has not filed its Schedules yet for Wells Fargo to gauge its security position.

2       More importantly, the Debtor relies on its accounts receivable as Wells Fargo's adequate

3   protection. However, the Debtor has not provided an Accounts Receivable Aging and thus does not

4   provide an accurate measure of Wells Fargo's security therein. Moreover, the Debtor does not

5   provide any credible information to the Court and Wells Fargo as to the collectability of the

6   receivables in the current economic conjecture, solely claiming in conclusory fashion that the

7   accounts are 90% collectible.

8       Relief from stay is also warranted because the Debtor has no equity whatsoever in the

9   Collateral. In determining whether there is equity on the subject property, all encumbrances,

10  including all costs and fees, against the property must be considered. *In re Development, Inc.*, 36

11  B.R. 998 (Bankr. D. Haw. 1984). According to the Debtor's own admissions in its Motion, along

12  with the evidence of third-parties' interest in the cash collateral, there is absolutely no equity therein

13  for Wells Fargo.

14      To make matters worse, the Debtor is actually proposing to worsen Wells Fargo's position,

15  as the Budget include little post-petition debt service to Wells Fargo. On the other hand, Debtor

16  apparently has no issue paying its counsel and its insiders/officers.

17      Any argument by the Debtor that is offering to protect Wells Fargo's position is simply futile

18  and not supported by the facts.

19  **D.    Debtor May Not Pay Insiders Out of Wells Fargo's Cash Collateral:**

20      Local Bankruptcy Rule 2014-1(a)(1) provides as follows:

21      "**No compensation** or other remuneration may be paid from the assets of the estate to a
        debtor's **owners**, partners, officers, directors, shareholders, **or relatives of insiders** as
22      defined by 11 U.S.C. § 101(31), from the time of the filing of the petition **until the
        confirmation of a plan** nor may approved compensation be increased unless the debtor
23      serves a Notice of Setting/Increasing Insider Compensation ("Notice") in accordance with
        procedures adopted by the United States trustee pursuant to this rule." [Emphasis added]
24

25      Debtor is clearly seeking to pay its owners in violation of this Rule. The Debtor has yet to

26  file, much less confirm, a Plan, yet appears to have paid compensation to its officers/insiders in

27  August, 2014, in the amount of $16,000.00.

28  \\\

1    Even if, for the sake of argument, insider compensation were allowed out of Wells Fargo's

2    cash collateral, Debtor has not filed a Notice of Setting/Increasing Insider Compensation and thus

3    no compensation may be paid.  Furthermore, Debtor has not provided any evidence to determine

4    whether the proposed compensation complies with the reasonableness requirement set forth in

5    Section 328 of the Bankruptcy Code.

6    Wells Fargo respectfully requests that the Court order that further compensation to any

7    insiders/officers be disallowed, and that any post-petition compensation to Debtor's insiders/officers

8    be disgorged forthwith.

9    **E.    Debtor may not pay its counsel from the Cash collateral:**

10    Wells Fargo does not agree to a "carve out" for administrative attorneys' fees. Under

11    circumstances where the value of the creditor's collateral is decreasing, no such "carve out" is

12    justified.  "The general bankruptcy rule is that, absent and express agreement to the contrary, the

13    expenses associated with administering a bankruptcy estate are not chargeable to a secured

14    creditor's collateral or claim, but must be borne out of the unencumbered assets of the estate." 4

15    Collier on Bankruptcy, ¶ 506.05 (LexisNexis 2010).  The debtor in possession and estate

16    professionals cannot be paid out of Wells Fargo's cash collateral unless (i) the expenses are

17    "necessary" to preserve or dispose of the collateral, (ii) they are "reasonable," and (iii) the

18    incurrence of the expenses provided a "benefit" to the secured creditor. Id. The burden of proof is

19    entirely the trustee's where Section 506(c) reimbursement is sought. Id. at ¶ 506.05[9], and cases

20    there cited.

21    Wells Fargo hereby opposes Debtor's attempts to use the cash collateral to pay its counsel

22    $1,800.00 in August, 2014, and $10,000.00 per month beginning in September, 2014.  Debtor's

23    counsel has not even filed any fee application to be entitled to any compensation.  If anything,

24    Debtor needs to pay its administrative expenses from the income generated by its business.

25    **F.    Reservation of Objections:**

26    Wells Fargo hereby reserves its right to raise further objections and arguments, as well as its

27    right to supplement the arguments set forth above, prior to entry of a final order for use of cash

28    collateral.  Wells Fargo may develop more facts as the case proceeds, which would justify

1   discontinuing use of cash collateral, dismissal, conversion or appointment of a chapter 11 trustee.

2

### IV.

3

### CONCLUSION

4           For all the foregoing reasons, Wells Fargo requests entry of its proposed order granting the

5   relief as hereinbefore described and such other and further relief as the Court deems just and proper.

6   DATED: August 15, 2014             Respectfully submitted,

7                                 HEMAR, ROUSSO & HEALD, LLP

8                                     /s/ *Raffi Khatchadourian*

9                                 By:_____

                                    RAFFI KHATCHADOURIAN

10                                 Attorneys for Objecting Secured Creditor,

                                    WELLS FARGO BANK, NATIONAL ASSOCIATION

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### DECLARATION OF ROBERT TURNER

I, Robert Turner, declare as follows:

1.      I am a Loan Adjustor in the Credit Management Group of WELLS FARGO BANK,
NATIONAL ASSOCIATION (hereinafter "Wells Fargo"), a Secured Creditor of Debtor BRAUN
DEVELOPMENT GROUP, INC. ("Debtor").  I am a duly authorized custodian of Wells Fargo's
records concerning the Debtor's accounts, and I make this declaration based up my review of those
records in addition to my own personal knowledge.  If called upon to testify to the following, I could
and would do so competently.

2.      On or about December 26, 2006, Wells Fargo and Debtor entered into a Commercial
Security Agreement and Note (sometimes collectively referred to herein as the "Loan"), whereby
Debtor borrowed and promised to pay to Wells Fargo the principal sum of $546,800.00, together
with interest at a variable rate, as stated in the Note.  True and correct copies of the Note and
Commercial Security Agreement are attached hereto as Exhibits "1" and "2," respectively, and
incorporated herein by reference.

3.      The balance due pursuant to the Loan is $160,467.03 as of August 15, 2014.  The
principal and interest payment on the Loan is currently $6,100.77.  The Loan is currently due for the
August 15, 2014, principal and interest payment.

4.      The Commercial Security Agreement pledged all of Debtor's tangible and intangible
business assets as collateral for the Loan.  Wells Fargo perfected a first priority security interest in
the Collateral on account of the Loan by filing a UCC-1 Financing Statement with the California
Secretary of State.  A true and correct copy of the UCC-1 Financing Statement is attached hereto as
Exhibit "3," and incorporated herein by reference.  A true and correct copy of the UCC-1
Continuation Statement filed by Wells Fargo is attached hereto as Exhibit "4," and incorporated
herein by reference.

5.      On or about February 6, 2007, Wells Fargo and Debtor entered into a Line of Credit
Agreement and Security Agreement (hereinafter collectively the "Line of Credit"), whereby Debtor
borrowed and promised to pay to Wells Fargo the principal sum of $100,000.00, together with
interest at a variable rate, as stated in the Line of Credit.  I am awaiting a copy of the Line of Credit

1  documents from our records department and can provide them to the Court upon receipt if requested

2  by the Court.

3       6.     The balance due pursuant to the Line of Credit is $50,267.23 as of August 15, 2014.

4  The principal and interest payment on the Line of Credit is currently $1,939.00.  The Line of Credit

5  is current, with the next principal and interest payment due on August 22, 2014.

6       7.     The Commercial Security Agreement pledged all of Debtor's tangible and intangible

7  business assets as collateral for the Line of Credit.  Wells Fargo perfected a second priority security

8  interest in the Collateral on account of the principal and interest payment by filing a UCC-1

9  Financing Statement with the California Secretary of State.  A true and correct copy of the UCC-1

10  Financing Statement is attached hereto as Exhibit "5," and incorporated herein by reference.  A true

11  and correct copy of the UCC-1 Continuation Statement filed by Wells Fargo is attached hereto as

12  Exhibit "6," and incorporated herein by reference.

13       8.     I am also informed and believe that other creditors listed by Debtor in its Motion

14  have a security in the cash collateral, which is thus over-encumbered.  True and correct copies of the

15  UCC-1 Continuation Statements filed by the junior creditors are attached hereto collectively as

16  Exhibit "7," and incorporated herein by reference.

17       9.     Wells Fargo does not consent to the use of its cash collateral pursuant to the Debtor's

18  proposed budget, as Debtor is proposing to pay Wells Fargo only $3,000.00 out of its cash

19  collateral, presumably solely on account of the Loan, while giving preferential treatment to its

20  counsel, insiders and officers.

21       I declare under penalty of perjury under the laws of the United States of America that the

22  foregoing is true and correct.

23       Executed this 15th day of August, 2014, at Roseville, California.

24

25

26                      ROBERT TURNER

27

28

NOTE: When using this form to indicate service of a proposed order, DO NOT list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 15910 Ventura Blvd., Twelfth Floor, Encino, CA 91436.

A true and correct copy of the foregoing document described as **OPPOSITION TO DEBTOR'S NOTICE OF MOTION AND EMERGENCY MOTION FOR USE OF CASH COLLATERAL; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF ROBERT TURNER IN SUPPORT THEREOF** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** - Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **August 15, 2014,** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

* Debtor's counsel M. Jonathan Hayes, Esq.    jhayes@srhlawfirm.com, jhayesecf@gmail.com
* United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
* U.S. Trustee's counsel Hatty K. Yip, Esq.    hatty.yip@usdoj.gov

**II. SERVED BY FIRST CLASS MAIL:** On **August 15, 2014,** I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Debtor Braun Development Group, Inc. dba Artwear, 21 Fayence, Newport Coast, CA 92657

**III. SERVED BY PERSONAL DELIVERY:** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **August 15, 2014.** I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

Debtor's counsel M. Jonathan Hayes, Esq., 15233 Ventura Blvd., Suite 250, Sherman Oaks, CA 91403
United States Trustee (LA), 915 Wilshire Blvd, Suite 1850, Los Angeles, CA 90017
U.S. Trustee's counsel Hatty K. Yip, Esq., 915 Wilshire Blvd., Suite 1850, Los Angeles, CA 90017

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| Date | Type Name | Signature |
|---|---|---|
| August 15, 2014 | BLANCA GUTIERREZ | /s/ Blanca Gutierrez |

EXHIBIT 1



# U.S. Small Business Administration
# NOTE

| | |
|---|---|
| SBA Loan # | ███████7600S |
| SBA Loan Name | Braun Development Group, Inc. |
| Date | December 26, 2006 |
| Loan Amount | $546,800.00 |
| Interest Rate | Variable |
| Borrower | Braun Development Group, Inc. |
| Operating Company | N/A |
| Lender | Wells Fargo Bank, National Association |

**1. PROMISE TO PAY:**

In return for the Loan, Borrower promises to pay to the order of Lender the amount of Five Hundred Forty-six Thousand Eight Hundred and 00/100 Dollars , interest on the unpaid principal balance, and all other amounts required by this Note.

**2. DEFINITIONS:**

"Collateral" means any property taken as security for payment of this Note or any guarantee of this Note.

"Guarantor" means each person or entity that signs a guarantee of payment of this Note.

"Loan" means the loan evidenced by this Note.

"Loan Documents" means the documents related to this loan signed by Borrower, any Guarantor, or anyone who pledges collateral.

"SBA" means the Small Business Administration, an Agency of the United States of America.

**3. PAYMENT TERMS**

Borrower must make all payments at the place Lender designates. The payment terms for this Note are:

The interest rate on this Note will fluctuate. The initial interest rate is 10.25% per year. This initial rate is the prime rate on the date SBA received the loan application, plus 2.00%. The initial interest rate must remain in effect until the first change period begins.

Borrower must pay one payment of interest only on the disbursed principal balance one month from the month this Note is dated; payment must be made on the 15th calendar day in the month it is due.

Borrower must pay principal and interest payments of $7,301.67 every month beginning two months from the month this Note is dated; payments must be made on the 15th calendar day in the months they are due.

Lender will apply each installment payment first to pay interest accrued to the day Lender receives the payment, then to bring principal current, then to pay any late fees, and will apply any remaining balance to reduce principal.

The interest rate will be adjusted monthly (the "change period").

The "Prime Rate" is the prime rate in effect on the first business day of the month in which an interest rate change occurs, as published in the Wall Street Journal on the next business day.

The adjusted interest rate will be 2.00% above the prime rate. Lender will adjust the interest rate on the first calendar day of each change period. The change in interest rate is effective on the day whether or not Lender gives Borrower notice of the change.

Lender must adjust the payment amount at least annually as needed to amortize principal over the remaining term of the note.

If SBA purchases the guaranteed portion of the unpaid balance, the interest rate becomes fixed at the rate in effect at the time of the earliest uncured payment default. If there is no uncured payment default, the rate becomes fixed at the rate in effect at the time of purchase.

Loan Prepayment:

Notwithstanding any provision in this Note to the contrary:

Borrower may prepay this Note. Borrower may prepay 20 percent or less of the unpaid principal balance at any time without notice. If Borrower prepays more than 20 percent and the Loan has been sold on the secondary market, Borrower must:

a. Give Lender written notice;

Fax:6029777490          Dec 26 2006  12:51      P.05

b. Pay all accrued interest; and

c. If the prepayment is received less than 21 days from the date Lender receives the notice, pay an amount equal to 21 days' interest from the date Lender receives the notice, less any interest accrued during the 21 days and paid under subparagraph b., above.

If Borrower does not prepay within 30 days from the date Lender receives the notice, Borrower must give Lender a new notice.

All remaining principal and accrued interest is due and payable 10 years from date of Note.

Late Charge: If a payment on this Note is more than 10 days late, Lender may charge Borrower a late fee of up to 5.00% of the unpaid portion of the regularly scheduled payment.

**4. DEFAULT:**    Borrower is in default under this Note if Borrower does not make a payment when due under this Note, or if Borrower or Operating Company:

    **A.**   Fails to do anything required by this Note and other Loan Documents;

    **B.**   Defaults on any other loan with Lender;

    **C.**   Does not preserve, or account to Lender's satisfaction for, any of the Collateral or its proceeds;

    **D.**   Does not disclose, or anyone acting on their behalf does not disclose, any material fact to Lender or SBA;

    **E.**   Makes, or anyone acting on their behalf makes, a materially false or misleading representation to Lender or SBA;

    **F.**   Defaults on any loan or agreement with another creditor, if Lender believes the default may materially affect Borrower's ability to pay this Note;

    **G.**   Fails to pay any taxes when due;

    **H.**   Becomes the subject of a proceeding under any bankruptcy or insolvency law;

    **I.**   Has a receiver or liquidator appointed for any part of their business or property;

    **J.**   Makes an assignment for the benefit of creditors;

    **K.**   Has any adverse change in financial condition or business operation that Lender believes may materially affect Borrower's ability to pay the Note;

    **L.**   Reorganizes, merges, consolidates, or otherwise changes ownership or business structure without Lender's prior written consent; or

    **M.**   Becomes the subject of a civil or criminal action that Lender believes may materially affect Borrower's ability to pay this Note.

**5. LENDER'S RIGHTS IF THERE IS A DEFAULT:**    Without notice or demand and without giving up any of its rights, Lender may:

    **A.**   Require immediate payment of all amounts owing under this Note;

    **B.**   Collect all amounts owing from any Borrower or Guarantor;

    **C.**   File suit and obtain judgment;

    **D.**   Take possession of any Collateral; or

    **E.**   Sell, lease, or otherwise dispose of, any Collateral at public or private sale, with or without advertisement.

**6. LENDER'S GENERAL POWERS:**    Without notice and without Borrower's consent, Lender may:

    **A.**   Bid on or buy the Collateral at its sale or the sale of another lienholder, at any price it chooses;

    **B.**   Incur expenses to collect amounts due under this Note, enforce the terms of this Note or any other Loan Document, and preserve or dispose of the Collateral. Among other things, the expenses may include payments for property taxes, prior liens, insurance, appraisals, environmental remediation costs, and reasonable attorney's fees and costs. If Lender incurs such expenses, it may demand immediate repayment from Borrower or add the expenses to the principal balance;

    **C.**   Release anyone obligated to pay this Note;

    **D.**   Compromise, release, renew, extend or substitute any of the Collateral; and

    **E.**   Take any action necessary to protect the Collateral or collect amounts owing on this Note.

**7. WHEN FEDERAL LAW APPLIES:**    When SBA is the holder, this Note will be interpreted and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Note, Borrower may not claim or assert against SBA any local or state law to deny any obligation, defeat any claim of SBA, or preempt federal law.

**8. SUCCESSORS AND ASSIGNS:**    Under this Note, Borrower and Operating Company include the successors of each, and Lender includes its successors and assigns.

**9. GENERAL PROVISIONS:**

    **A.**   All individuals and entities signing this Note are jointly and severally liable.

    **B.**   Borrower waives all suretyship defenses.

    **C.**   Borrower must sign all documents necessary at any time to comply with the Loan Documents and to enable Lender to acquire, perfect, or maintain Lender's liens on Collateral.

    **D.**   Lender may exercise any of its rights separately or together, as many times and in any order it chooses. Lender may delay or forgo enforcing any of its rights without giving up any of them.

    **E.**   Borrower may not use an oral statement of Lender or SBA to contradict or alter the written terms of this Note.

    **F.**   If any part of this Note is unenforceable, all other parts remain in effect.

    **G.**   To the extent allowed by law, Borrower waives all demands and notices in connection with this Note, including presentment, demand, protest, and notice of dishonor. Borrower also waives any defenses based upon any claim that Lender did not obtain any guarantee; did not obtain, perfect, or maintain a lien upon Collateral; impaired Collateral; or did not obtain the fair market value of Collateral at a sale.

**10. STATE-SPECIFIC PROVISIONS:**

**11. BORROWER'S NAME(S) AND SIGNATURE(S):**
By signing below, each individual or entity becomes obligated under this Note as Borrower.

**BORROWER:**

Braun Development Group, Inc.

By _(signature)_

Lynn L. Braun, President of Braun Development
Group, Inc.

EXHIBIT 2



# COMMERCIAL SECURITY AGREEMENT

| Principal | Loan Date | Maturity | Loan No. | | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $546,800.00 | 12-26-2006 | 01-15-2017 | | | | | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Grantor:** Braun Development Group, Inc.
13621 South Main Street
Los Angeles, CA 90061

**Lender:** Wells Fargo Bank, National Association
SBA Lending
121 Park Center Plaza, 6th Floor
San Jose, CA 95113

THIS COMMERCIAL SECURITY AGREEMENT dated December 26, 2006, is made and executed between Braun Development Group, Inc. ("Grantor") and Wells Fargo Bank, National Association ("Lender").

**GRANT OF SECURITY INTEREST.** For valuable consideration, Grantor grants to Lender a security interest in the Collateral to secure the Indebtedness and agrees that Lender shall have the rights stated in this Agreement with respect to the Collateral, in addition to all other rights which Lender may have by law.

**COLLATERAL DESCRIPTION.** The word "Collateral" as used in this Agreement means the following described property, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located, in which Grantor is giving to Lender a security interest for the payment of the Indebtedness and performance of all other obligations under the Note and this Agreement:

All Inventory, Chattel Paper, Accounts, Equipment and General Intangibles

In addition, the word "Collateral" also includes all the following, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located:

(A) All accessions, attachments, accessories, tools, parts, supplies, replacements of and additions to any of the collateral described herein, whether added now or later.

(B) All products and produce of any of the property described in this Collateral section.

(C) All accounts, general intangibles, instruments, rents, monies, payments, and all other rights, arising out of a sale, lease, consignment or other disposition of any of the property described in this Collateral section.

(D) All proceeds (including insurance proceeds) from the sale, destruction, loss, or other disposition of any of the property described in this Collateral section, and sums due from a third party who has damaged or destroyed the Collateral or from that party's insurer, whether due to judgment, settlement or other process.

(E) All records and data relating to any of the property described in this Collateral section, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of Grantor's right, title, and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES WITH RESPECT TO THE COLLATERAL.** With respect to the Collateral, Grantor represents and promises to Lender that:

**Perfection of Security Interest.** Grantor agrees to take whatever actions are requested by Lender to perfect and continue Lender's security interest in the Collateral. Upon request of Lender, Grantor will deliver to Lender any and all of the documents evidencing or constituting the Collateral, and Grantor will note Lender's interest upon any and all chattel paper and instruments if not delivered to Lender for possession by Lender. This is a continuing Security Agreement and will continue in effect even though all or any part of the Indebtedness is paid in full and even though for a period of time Grantor may not be indebted to Lender.

**Notices to Lender.** Grantor will promptly notify Lender in writing at Lender's address shown above (or such other addresses as Lender may designate from time to time) prior to any (1) change in Grantor's name; (2) change in Grantor's assumed business name(s); (3) change in the management of the Corporation Grantor; (4) change in the authorized signer(s); (5) change in Grantor's principal office address; (6) change in Grantor's state of organization; (7) conversion of Grantor to a new or different type of business entity; or (8) change in any other aspect of Grantor that directly or indirectly relates to any agreements between Grantor and Lender. No change in Grantor's name or state of organization will take effect until after Lender has received notice.

**No Violation.** The execution and delivery of this Agreement will not violate any law or agreement governing Grantor or to which Grantor is a party, and its certificate or articles of incorporation and bylaws do not prohibit any term or condition of this Agreement.

**Enforceability of Collateral.** To the extent the Collateral consists of accounts, chattel paper, or general intangibles, as defined by the Uniform Commercial Code, the Collateral is enforceable in accordance with its terms, is genuine, and fully complies with all applicable laws and regulations concerning form, content and manner of preparation and execution, and all persons appearing to be obligated on the Collateral have authority and capacity to contract and are in fact obligated as they appear to be on the Collateral. At the time any account becomes subject to a security interest in favor of Lender, the account shall be a good and valid account representing an undisputed, bona fide indebtedness incurred by the account debtor, for merchandise held subject to delivery instructions or previously shipped or delivered pursuant to a contract of sale, or for services previously performed by Grantor with or for the account debtor. So long as this Agreement remains in effect, Grantor shall not, without Lender's prior written consent, compromise, settle, adjust, or extend payment under or with regard to any such Accounts. There shall be no setoffs or counterclaims against any of the Collateral, and no agreement shall have been made under which any deductions or discounts may be claimed concerning the Collateral except those disclosed to Lender in writing.

**Location of the Collateral.** Except in the ordinary course of Grantor's business, Grantor agrees to keep the Collateral (or to the extent the Collateral consists of intangible property such as accounts or general intangibles, the records concerning the Collateral) at Grantor's address shown above or at such other locations as are acceptable to Lender. Upon Lender's request, Grantor will deliver to Lender in form satisfactory to Lender a schedule of real properties and Collateral locations relating to Grantor's operations, including without limitation the following: (1) all real property Grantor owns or is purchasing; (2) all real property Grantor is renting or leasing; (3) all storage facilities.

## COMMERCIAL SECURITY AGREEMENT
### (Continued)

Grantor owns, rents, leases, or uses; and (4) all other properties where Collateral is or may be located.

**Removal of the Collateral.** Except in the ordinary course of Grantor's business, including the sales of inventory, Grantor shall not remove the Collateral from its existing location without Lender's prior written consent. To the extent that the Collateral consists of vehicles, or other titled property, Grantor shall not take or permit any action which would require application for certificates of title for the vehicles outside the State of California, without Lender's prior written consent. Grantor shall, whenever requested, advise Lender of the exact location of the Collateral.

**Transactions Involving Collateral.** Except for inventory sold or accounts collected in the ordinary course of Grantor's business, or as otherwise provided for in this Agreement, Grantor shall not sell, offer to sell, or otherwise transfer or dispose of the Collateral. While Grantor is not in default under this Agreement, Grantor may sell inventory, but only in the ordinary course of its business and only to buyers who qualify as a buyer in the ordinary course of business. A sale in the ordinary course of Grantor's business does not include a transfer in partial or total satisfaction of a debt or any bulk sale. Grantor shall not pledge, mortgage, encumber or otherwise permit the Collateral to be subject to any lien, security interest, encumbrance, or charge, other than the security interest provided for in this Agreement, without the prior written consent of Lender. This includes security interests even if junior in right to the security interests granted under this Agreement. Unless waived by Lender, all proceeds from any disposition of the Collateral (for whatever reason) shall be held in trust for Lender and shall not be commingled with any other funds; provided however, this requirement shall not constitute consent by Lender to any sale or other disposition. Upon receipt, Grantor shall immediately deliver any such proceeds to Lender.

**Title.** Grantor represents and warrants to Lender that Grantor holds good and marketable title to the Collateral, free and clear of all liens and encumbrances except for the lien of this Agreement. No financing statement covering any of the Collateral is on file in any public office other than those which reflect the security interest created by this Agreement or to which Lender has specifically consented. Grantor shall defend Lender's rights in the Collateral against the claims and demands of all other persons.

**Repairs and Maintenance.** Grantor agrees to keep and maintain, and to cause others to keep and maintain, the Collateral in good order, repair and condition at all times while this Agreement remains in effect. Grantor further agrees to pay when due all claims for work done on, or services rendered or material furnished in connection with the Collateral so that no lien or encumbrance may ever attach to or be filed against the Collateral.

**Inspection of Collateral.** Lender and Lender's designated representatives and agents shall have the right at all reasonable times to examine and inspect the Collateral wherever located.

**Taxes, Assessments and Liens.** Grantor will pay when due all taxes, assessments and liens upon the Collateral, its use or operation, upon this Agreement, upon any promissory note or notes evidencing the Indebtedness, or upon any of the other Related Documents. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized. If the Collateral is subjected to a lien which is not discharged within fifteen (15) days, Grantor shall deposit with Lender cash, a sufficient corporate surety bond or other security satisfactory to Lender in an amount adequate to provide for the discharge of the lien plus any interest, costs, attorneys' fees or other charges that could accrue as a result of foreclosure or sale of the Collateral. In any contest Grantor shall defend itself and Lender and shall satisfy any final adverse judgment before enforcement against the Collateral. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings. Grantor further agrees to furnish Lender with evidence that such taxes, assessments, and governmental and other charges have been paid in full and in a timely manner. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized.

**Compliance with Governmental Requirements.** Grantor shall comply promptly with all laws, ordinances, rules and regulations of all governmental authorities, now or hereafter in effect, applicable to the ownership, production, disposition, or use of the Collateral, including all laws or regulations relating to the undue erosion of highly-erodible land or relating to the conversion of wetlands for the production of an agricultural product or commodity. Grantor may contest in good faith any such law, ordinance or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Lender's interest in the Collateral, in Lender's opinion, is not jeopardized.

**Hazardous Substances.** Grantor represents and warrants that the Collateral never has been, and never will be so long as this Agreement remains a lien on the Collateral, used in violation of any Environmental Laws or for the generation, manufacture, storage, transportation, treatment, disposal, release or threatened release of any Hazardous Substance. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Collateral for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any Environmental Laws, and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims and losses resulting from a breach of this provision of this Agreement. This obligation to indemnify and defend shall survive the payment of the Indebtedness and the satisfaction of this Agreement.

**Maintenance of Casualty Insurance.** Grantor shall procure and maintain all risks insurance, including without limitation fire, theft and liability coverage together with such other insurance as Lender may require with respect to the Collateral, in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Grantor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least thirty (30) days' prior written notice to Lender and not including any disclaimer of the insurer's liability for failure to give such a notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. In connection with all policies covering assets in which Lender holds or is offered a security interest, Grantor will provide Lender with such loss payable or other endorsements as Lender may require. If Grantor at any time fails to obtain or maintain any insurance as required under this Agreement, Lender may (but shall not be obligated to) obtain such insurance as Lender deems appropriate, including if Lender so chooses "single interest insurance," which will cover only Lender's interest in the Collateral.

**Application of Insurance Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Collateral, whether or not such casualty or loss is covered by insurance. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. All proceeds of any insurance on the Collateral, including accrued proceeds thereon, shall be held by Lender as part of the Collateral. If Lender consents to repair or replacement of the damaged or destroyed Collateral, Lender shall, upon satisfactory proof of expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration. If Lender does not consent to repair or replacement of the Collateral, Lender shall retain a sufficient amount of the proceeds to pay all of the Indebtedness, and shall pay the balance to Grantor. Any proceeds which have not been disbursed within six (6) months after their receipt and which Grantor has not committed to the repair or restoration of the Collateral shall be used to prepay the Indebtedness.

**Insurance Reserves.** Lender may require Grantor to maintain with Lender reserves for payment of insurance premiums, which reserves shall be created by monthly payments from Grantor of a sum estimated by Lender to be sufficient to produce, at least fifteen (15) days before the premium due date, amounts at least equal to the insurance premiums to be paid. If fifteen (15) days before payment is due, the reserve

## COMMERCIAL SECURITY AGREEMENT
### (Continued)

Page 3

funds are insufficient, Grantor shall upon demand pay any deficiency to Lender. The reserve funds shall be held by Lender as a general deposit and shall constitute a non-interest-bearing account which Lender may satisfy by payment of the insurance premiums required to be paid by Grantor as they become due. Lender does not hold the reserve funds in trust for Grantor, and Lender is not the agent of Grantor for payment of the insurance premiums required to be paid by Grantor. The responsibility for the payment of premiums shall remain Grantor's sole responsibility.

**Insurance Reports.** Grantor, upon request of Lender, shall furnish to Lender reports on each existing policy of insurance showing such information as Lender may reasonably request including the following: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured; (5) the then current value on the basis of which insurance has been obtained and the manner of determining that value; and (6) the expiration date of the policy. In addition, Grantor shall upon request by Lender (however not more often than annually) have an independent appraiser satisfactory to Lender determine, as applicable, the cash value or replacement cost of the Collateral.

**Financing Statements.** Grantor authorizes Lender to file a UCC financing statement, or alternatively, a copy of this Agreement to perfect Lender's security interest. At Lender's request, Grantor additionally agrees to sign all other documents that are necessary to perfect, protect, and continue Lender's security interest in the Property. Grantor will pay all filing fees, title transfer fees, and other fees and costs involved unless prohibited by law or unless Lender is required by law to pay such fees and costs. Grantor irrevocably appoints Lender to execute documents necessary to transfer title if there is a default. Lender may file a copy of this Agreement as a financing statement. If Grantor changes Grantor's name or address, or the name or address of any person granting a security interest under this Agreement changes, Grantor will promptly notify the Lender of such change.

**GRANTOR'S RIGHT TO POSSESSION AND TO COLLECT ACCOUNTS.** Until default and except as otherwise provided below with respect to accounts, Grantor may have possession of the tangible personal property and beneficial use of all the Collateral and may use it in any lawful manner not inconsistent with this Agreement or the Related Documents, provided that Grantor's right to possession and beneficial use shall not apply to any Collateral where possession of the Collateral by Lender is required by law to perfect Lender's security interest in such Collateral. Until otherwise notified by Lender, Grantor may collect any of the Collateral consisting of accounts. At any time and even though no Event or Default exists, Lender may exercise its rights to collect the accounts and to notify account debtors to make payments directly to Lender for application to the Indebtedness. If Lender at any time has possession of any Collateral, whether before or after an Event of Default, Lender shall be deemed to have exercised reasonable care in the custody and preservation of the Collateral if Lender takes such action for that purpose as Grantor shall request or as Lender, in Lender's sole discretion, shall deem appropriate under the circumstances, but failure to honor any request by Grantor shall not of itself be deemed to be a failure to exercise reasonable care. Lender shall not be required to take any steps necessary to preserve any rights in the Collateral against prior parties, nor to protect, preserve or maintain any security interest given to secure the Indebtedness.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Grantor fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Agreement or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Collateral and paying all costs for insuring, maintaining and preserving the Collateral. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Agreement also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Other Defaults.** Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

**Default in Favor of Third Parties.** Should Borrower or any Grantor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Grantor's property or Grantor's or any Grantor's ability to repay the Indebtedness or perform their respective obligations under this Agreement or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Insolvency.** The dissolution or termination of Grantor's existence as a going business, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against any collateral securing the Indebtedness. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or Guarantor dies or becomes incompetent or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

Fax:6029777490                           Dec 26 2006  12:54       P.16

# COMMERCIAL SECURITY AGREEMENT
## (Continued)

Page 4

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Agreement, at any time thereafter, Lender shall have all the rights of a secured party under the California Uniform Commercial Code. In addition and without limitation, Lender may exercise any one or more of the following rights and remedies:

**Accelerate Indebtedness.** Lender may declare the entire Indebtedness, including any prepayment penalty which Grantor would be required to pay, immediately due and payable, without notice of any kind to Grantor.

**Assemble Collateral.** Lender may require Grantor to deliver to Lender all or any portion of the Collateral and any and all certificates of title and other documents relating to the Collateral. Lender may require Grantor to assemble the Collateral and make it available to Lender at a place to be designated by Lender. Lender also shall have full power to enter upon the property of Grantor to take possession of and remove the Collateral. If the Collateral contains other goods not covered by this Agreement at the time of repossession, Grantor agrees Lender may take such other goods, provided that Lender makes reasonable efforts to return them to Grantor after repossession.

**Sell the Collateral.** Lender shall have full power to sell, lease, transfer, or otherwise deal with the Collateral or proceeds thereof in Lender's own name or that of Grantor. Lender may sell the Collateral at public auction or private sale. Unless the Collateral threatens to decline speedily in value or is of a type customarily sold on a recognized market, Lender will give Grantor, and other persons as required by law, reasonable notice of the time and place of any public sale, or the time after which any private sale or any other disposition of the Collateral is to be made. However, no notice need be provided to any person who, after Event of Default occurs, enters into and authenticates an agreement waiving that person's right to notification of sale. The requirements of reasonable notice shall be met if such notice is given at least ten (10) days before the time of sale or disposition. All expenses relating to the disposition of the Collateral, including without limitation the expenses of retaking, holding, insuring, preparing for sale and selling the Collateral, shall become a part of the Indebtedness secured by this Agreement and shall be payable on demand, with interest at the Note rate from date of expenditure until repaid.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Collateral, with the power to protect and preserve the Collateral, to operate the Collateral preceding foreclosure or sale, and to collect the Rents from the Collateral and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Collateral exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Collect Revenues, Apply Accounts.** Lender, either itself or through a receiver, may collect the payments, rents, income, and revenues from the Collateral. Lender may at any time in Lender's discretion transfer any Collateral into Lender's own name or that of Lender's nominee and receive the payments, rents, income, and revenues therefrom and hold the same as security for the Indebtedness or apply it to payment of the Indebtedness in such order of preference as Lender may determine. Insofar as the Collateral consists of accounts, general intangibles, insurance policies, instruments, chattel paper, choses in action, or similar property, Lender may demand, collect, receipt for, settle, compromise, adjust, sue for, foreclose, or realize on the Collateral as Lender may determine, whether or not Indebtedness or Collateral is then due. For these purposes, Lender may, on behalf of and in the name of Grantor, receive, open and dispose of mail addressed to Grantor; change any address to which mail and payments are to be sent; and endorse notes, checks, drafts, money orders, documents of title, instruments and items pertaining to payment, shipment, or storage of any Collateral. To facilitate collection, Lender may notify account debtors and obligors on any Collateral to make payments directly to Lender.

**Obtain Deficiency.** If Lender chooses to sell any or all of the Collateral, Lender may obtain a judgment against Grantor for any deficiency remaining on the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this Agreement. Grantor shall be liable for a deficiency even if the transaction described in this subsection is a sale of accounts or chattel paper.

**Other Rights and Remedies.** Lender shall have all the rights and remedies of a secured creditor under the provisions of the Uniform Commercial Code, as may be amended from time to time. In addition, Lender shall have and may exercise any or all other rights and remedies it may have available at law, in equity, or otherwise.

**Election of Remedies.** Except as may be prohibited by applicable law, all of Lender's rights and remedies, whether evidenced by this Agreement, the Related Documents, or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Agreement, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**FURTHER ASSURANCES.** The parties hereto agree to do all things deemed necessary by Lender in order to fully document the loan evidenced by this Note and any related agreements, and will fully cooperate concerning the execution and delivery of security agreements, stock powers, instructions and/or other documents pertaining to any collateral intended to secure the Indebtedness. The undersigned agree to assist in the cure of any defects in the execution, delivery or substance of the Note and related agreements, and in the creation and perfection of any liens, security interests or other collateral rights securing the Note.

**CONSENT TO SELL LOAN.** The parties hereto agree: (a) Lender may sell or transfer all or part of this loan to one or more purchasers, whether related or unrelated to Lender; (b) Lender may provide to any purchaser, or potential purchaser, any information or knowledge Lender may have about the parties or about any other matter relating to this loan obligation, and the parties waive any rights to privacy it may have with respect to such matters; (c) the purchaser of a loan will be considered its absolute owner and will have all the rights granted under the loan documents or agreements governing the sale of the loan; and (d) the purchaser of a loan may enforce its interests irrespective of any claims or defenses that the parties may have against Lender.

**FACSIMILE AND COUNTERPART.** This document may be signed in any number of separate copies, each of which shall be effective as an original, but all of which taken together shall constitute a single document. An electronic transmission or other facsimile of this document or any related document shall be deemed an original and shall be admissible as evidence of the document and the signer's execution.

**ARBITRATION AGREEMENT.** Arbitration - Binding Arbitration. Lender and each party to this agreement hereby agree, upon demand by any party, to submit any Dispute to binding arbitration in accordance with the terms of this Arbitration Program. A "Dispute" shall include any dispute, claim or controversy of any kind, whether in contract or in tort, legal or equitable, now existing or hereafter arising, relating in any way to this Agreement or any related agreement incorporating this Arbitration Program (the "Documents"), or any past, present, or future loans, transactions, contracts, agreements, relationships, incidents or injuries of any kind whatsoever relating to or involving Business Banking, Regional Banking, or any successor group or department of Lender. DISPUTES SUBMITTED TO ARBITRATION ARE NOT RESOLVED IN COURT BY A JUDGE OR JURY.

**Governing Rules.** Any arbitration proceeding will (i) be governed by the Federal Arbitration Act (Title 9 of the United States Code), notwithstanding any conflicting choice of law provision in any of the documents between the parties; and (ii) be conducted by the AAA (American Arbitration Association), or such other administrator as the parties shall mutually agree upon, in accordance with the AAA's commercial dispute resolution procedures, unless the claim or counterclaim is at least $1,000,000.00 exclusive of claimed interest, arbitration fees and costs in which case the arbitration shall be conducted in accordance with the AAA's optional procedures for large, complex

Fax:6029777490        Dec 26 2006 12:54    P.17

# COMMERCIAL SECURITY AGREEMENT
## (Continued)

commercial disputes (the commercial dispute resolution procedures or the optional procedures for large, complex commercial disputes to be referred to, as applicable, as the "Rules"). If there is any inconsistency between the terms hereof and the Rules, the terms and procedures set forth herein shall control. Arbitration proceedings hereunder shall be conducted at a location mutually agreeable to the parties, or if they cannot agree, then at a location selected by the AAA in the state of the applicable substantive law primarily governing the Credit. Any party who fails or refuses to submit to arbitration following a demand by any other party shall bear all costs and expenses incurred by such other party in compelling arbitration of any Dispute. Arbitration may be demanded at any time, and may be compelled by summary proceedings in Court. The institution and maintenance of an action for judicial relief or pursuit of a provisional or ancillary remedy shall not constitute a waiver of the right of any party, including the plaintiff, to submit the controversy or claim to arbitration if any other party contests such action for judicial relief. The arbitrator shall award all costs and expenses of the arbitration proceeding. Nothing contained herein shall be deemed to be a waiver by any party that is a Bank of the protections afforded to it under 12 U.S.C. "91 or any similar applicable state law.

**No Waiver of Provisional Remedies, Self-Help and Foreclosure.** The arbitration requirement does not limit the right of any party to (i) foreclose against real or personal property collateral; (ii) exercise self-help remedies relating to collateral or proceeds of collateral such as setoff or repossession; or (iii) obtain provisional or ancillary remedies such as replevin, injunctive relief, attachment or the appointment of a receiver, before during or after the pendency of any arbitration proceeding. This exclusion does not constitute a waiver of the right or obligation of any party to submit any Dispute to arbitration or reference hereunder, including those arising from the exercise of the actions detailed in sections (i), (ii) and (iii) of this paragraph.

**Arbitrator Qualifications and Powers.** Any arbitration proceeding in which the amount in controversy is $5,000,000.00 or less will be decided by a single arbitrator selected according to the Rules, and who shall not render an award of greater than $5,000,000.00. Any Dispute in which the amount in controversy exceeds $5,000,000.00 shall be decided by majority vote of a panel of three arbitrators; provided however, that all three arbitrators must actively participate in all hearings and deliberations. Every arbitrator must be a practicing attorney or a retired member of the state or federal judiciary, in either case with a minimum of ten years experience in the substantive law applicable to the subject matter of the Dispute. The arbitrator will determine whether or not an issue is arbitratable and will give effect to the statutes of limitation in determining any claim. In any arbitration proceeding the arbitrator will decide (by documents only or with a hearing at the arbitrator's discretion) any pre-hearing motions which are similar to motions to dismiss for failure to state a claim or motions for summary adjudication. The arbitrator shall resolve all Disputes in accordance with the applicable substantive law and may grant any remedy or relief that a court of such state could order or grant within the scope hereof and such ancillary relief as is necessary to make effective any award. The arbitrator shall also have the power to award recovery of all costs and fees, to impose sanctions and to take such other action as the arbitrator deems necessary to the same extent a judge could pursuant to the Federal Rules of Civil Procedure, the applicable State Rules of Civil Procedure, or other applicable law. Judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction.

**Discovery.** In any arbitration proceeding discovery will be permitted in accordance with the Rules. All discovery shall be expressly limited to matters directly relevant to the Dispute being arbitrated and must be completed no later than 20 days before the hearing date and within 180 days of the filing of the Dispute with the AAA. Any requests for an extension of the discovery periods, or any discovery disputes, will be subject to final determination by the arbitrator upon a showing that the request for discovery is essential for the party's presentation and that no alternative means for obtaining information is available.

**Miscellaneous.** To the maximum extent practicable, the AAA, the arbitrators and the parties shall take all action required to conclude any arbitration proceeding within 180 days of the filing of the Dispute with the AAA. The resolution of any Dispute shall be determined by a separate arbitration proceeding and such Dispute shall not be consolidated with other disputes or included in any class proceeding. No arbitrator or other party to an arbitration proceeding may disclose the existence, content or results thereof, except for disclosures of information by a party required in the ordinary course of its business or by applicable law or regulation. If more than one agreement for arbitration by or between the parties potentially applies to a Dispute, the arbitration provision most directly related to the documents between the parties or the subject matter of the Dispute shall control. This arbitration provision shall survive termination, amendment or expiration of any of the documents or any relationship between the parties.

**State-Specific Provisions.**

**If California law governs the Dispute, the following provision is included:**

**Real Property Collateral; Judicial Reference.** Notwithstanding anything herein to the contrary, no Dispute shall be submitted to arbitration if the Dispute concerns indebtedness secured directly or indirectly, in whole or in part, by any real property unless the holder of the mortgage, lien or security interest specifically elects in writing to proceed with the arbitration. If any such Dispute is not submitted to arbitration, the Dispute shall, at the election of any party, be referred to a referee in accordance with California Code of Civil Procedure Section 638 et seq., and this general reference agreement is intended to be specifically enforceable in accordance with said Section 638. A referee with the qualifications required herein for arbitrators shall be selected pursuant to the AAA's selection procedures. Judgment upon the decision rendered by a referee shall be entered in the court in which such proceeding was commenced in accordance with California Code of Civil Procedure Sections 644 and 645.

**If Idaho law governs the Dispute, the following provision is included:**

**Real Property Collateral; Judicial Reference.** Notwithstanding anything herein to the contrary, no dispute shall be submitted to arbitration if the dispute concerns indebtedness secured directly or indirectly, in whole or in part, by any real property unless (i) the holder of the mortgage, lien or security interest specifically elects in writing to proceed with the arbitration, or (ii) all parties to the arbitration waive any rights or benefits that might accrue to them by virtue of the single action rule statute of Idaho, thereby agreeing that all indebtedness and obligations of the parties, and all mortgages, liens and security interests securing such indebtedness and obligations, shall remain fully valid and enforceable.

**If Montana law governs the Dispute, the following provision is included:**

**Real Property Collateral; Judicial Reference.** Notwithstanding anything herein to the contrary, no dispute shall be submitted to arbitration if the dispute concerns indebtedness secured directly or indirectly, in whole or in part, by any real property unless (i) the holder of the mortgage, lien or security interest specifically elects in writing to proceed with the arbitration, or (ii) all parties to the arbitration waive any rights or benefits that might accrue to them by virtue of the single action rule statute of Montana, thereby agreeing that all indebtedness and obligations of the parties, and all mortgages, liens and security interests securing such indebtedness and obligations, shall remain fully valid and enforceable.

**If Nevada law governs the Dispute, the following provision is included:**

**Real Property Collateral; Judicial Reference.** Notwithstanding anything herein to the contrary, no dispute shall be submitted to arbitration if the dispute concerns indebtedness secured directly or indirectly, in whole or in part, by any real property unless (i) the holder of the mortgage, lien or security interest specifically elects in writing to proceed with the arbitration, or (ii) all parties to the arbitration waive any rights or benefits that might accrue to them by virtue of the single action rule statute of Nevada, thereby agreeing that all indebtedness and obligations of the parties, and all mortgages, liens and security interests securing such indebtedness and obligations, shall remain fully valid and enforceable.

**If Utah law governs the Dispute, the following provision is included:**

(Page 6 of 7)

Case 2:14-bk-24711-ER   Doc 33   Filed 08/15/14   Entered 08/15/14 12:56:49   Desc
Main Document     Page 22 of 40
Fax:6029777490                    Dec 26 2006  12:55      P.18

# COMMERCIAL SECURITY AGREEMENT
## (Continued)

Page 6

**Real Property Collateral; Judicial Reference.** Notwithstanding anything herein to the contrary, no Dispute shall be submitted to arbitration if the Dispute concerns indebtedness secured directly or indirectly, in whole or in part, by any real property unless the holder of the mortgage, lien or security interest specifically elects in writing to proceed with the arbitration. If any such Dispute is not submitted to arbitration, the Dispute shall, at the election of any party, be referred to a master in accordance with Utah Rule of Civil Procedure 53, and this general reference agreement is intended to be specifically enforceable. A master with the qualifications required herein for arbitrators shall be selected pursuant to the AAA's selection procedures. Judgment upon the decision rendered by a master shall be entered in the court in which such proceeding was commenced in accordance with Utah Rule of Civil Procedure 53(e).

**SBA ARBITRATION.** The parties specifically agree that the provisions of this Arbitration Program are not applicable to any dispute between any party and the U.S. Small Business Administration (the "SBA"), including but not limited to, any dispute with the SBA after purchase of the loan by the SBA.

**GOVERNING LAW.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of California.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

**Amendments.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Grantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement, and Grantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Grantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Applicable Law.** The Loan secured by this lien was made under a United States Small Business Administration (SBA) nationwide program which uses tax dollars to assist small business owners. If the United States is seeking to enforce this document, then under SBA regulations: (a) When SBA is the holder of the Note, this document and all documents evidencing or securing this Loan will be construed in accordance with federal law. (b) Lender or SBA may use local or state procedures for purposes such as filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using these procedures, SBA does not waive any federal immunity from local or state control, penalty, tax or liability. No Borrower or Guarantor may claim or assert against SBA any local or state law to deny any obligation of Borrower, or defeat any claim of SBA with respect to this Loan. Any clause in this document requiring arbitration is not enforceable when SBA is the holder of the Note secured by this instrument.

**Preference Payments.** Any monies Lender pays because of an asserted preference claim in Grantor's bankruptcy will become a part of the Indebtedness and, at Lender's option, shall be payable by Grantor as provided in this Agreement.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Notices.** Any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**Power of Attorney.** Grantor hereby appoints Lender as Grantor's irrevocable attorney-in-fact for the purpose of executing any documents necessary to perfect, amend, or to continue the security interest granted in this Agreement or to demand termination of filings of other secured parties. Lender may at any time, and without further authorization from Grantor, file a carbon, photographic or other reproduction of any financing statement or of this Agreement for use as a financing statement. Grantor will reimburse Lender for all expenses for the perfection and the continuation of the perfection of Lender's security interest in the Collateral.

**Waiver of Co-Obligor's Rights.** If more than one person is obligated for the Indebtedness, Grantor irrevocably waives, disclaims and relinquishes all claims against such other person which Grantor has or would otherwise have by virtue of payment of the Indebtedness or any part thereof, specifically including but not limited to all rights of indemnity, contribution or exoneration.

**Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**Successors and Assigns.** Subject to any limitations stated in this Agreement on transfer of Grantor's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Agreement or liability under the Indebtedness.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Agreement shall survive the execution and delivery of this Agreement, shall be continuing in nature, and shall remain in full force and effect until such time

Fax:6029777490                    Dec 26 2006   12:55        P.19

## COMMERCIAL SECURITY AGREEMENT
### (Continued)

Page 7

as Grantor's Indebtedness shall be paid in full.

**Time is of the Essence.** Time is of the essence in the performance of this Agreement.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Agreement.** The word "Agreement" means this Commercial Security Agreement, as this Commercial Security Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Commercial Security Agreement from time to time.

**Borrower.** The word "Borrower" means Braun Development Group, Inc. and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Collateral.** The word "Collateral" means all of Grantor's right, title and interest in and to all the Collateral as described in the Collateral Description section of this Agreement.

**Default.** The word "Default" means the Default set forth in this Agreement in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., Chapters 6.5 through 7.7 of Division 20 of the California Health and Safety Code, Section 25100, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

**Grantor.** The word "Grantor" means Braun Development Group, Inc..

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Grantor is responsible under this Agreement or under any of the Related Documents.

**Lender.** The word "Lender" means Wells Fargo Bank, National Association, its successors and assigns.

**Note.** The word "Note" means the Note executed by Braun Development Group, Inc. in the principal amount of $546,800.00 dated December 26, 2006, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

**Property.** The word "Property" means all of Grantor's right, title and interest in and to all the Property as described in the "Collateral Description" section of this Agreement.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

GRANTOR HAS READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS COMMERCIAL SECURITY AGREEMENT AND AGREES TO ITS TERMS. THIS AGREEMENT IS DATED DECEMBER 26, 2006.

GRANTOR:

BRAUN DEVELOPMENT GROUP, INC.

By: _____
Lynn L. Braun, President of Braun Development
Group, Inc.

LASER PRO Lending, Ver. 5.62.00.004  Copr. Harland Financial Solutions, Inc. 1997, 2006.  All Rights Reserved.  - CA  X:\LPL\CFI\LPL\E40.FC  TR-982  PR-120

EXHIBIT 3

## UCC FINANCING STATEMENT

**FOLLOW INSTRUCTIONS (front and back) CAREFULLY**

**A. NAME & PHONE OF CONTACT AT FILER [optional]**

**B. SEND ACKNOWLEDGMENT TO: (Name and Address)**
UCC DIRECT SERVICES
2727 ALLEN PARKWAY
HOUSTON, TX 77019
USA

DOCUMENT NUMBER: 11148240002
FILING NUMBER: 07-7099199940
FILING DATE: 01/18/2007 14:04
IMAGE GENERATED ELECTRONICALLY FOR XML FILING
THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names**

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Braun Development Group, Inc. | | | | |

OR

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 13621 South Main Street | Los Angeles | CA | 90061 | USA |

| 1d. SEE INSTRUCTIONS | ADD'L DEBTOR INFO | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID#, if any |
|---|---|---|---|---|
| | | Corporation | CA | C2958152   ☐NONE |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names**

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| | | | | |

OR

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 2d. SEE INSTRUCTIONS | ADD'L DEBTOR INFO | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID#, if any |
|---|---|---|---|---|
| | | | | ☐NONE |

**3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)**

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| Wells Fargo Bank, National Associaton | | | |

OR

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 121 Park Center Plaza 6th Floor | San Jose | CA | 95113 | USA |

**4. This FINANCING STATEMENT covers the following collateral:**

All Inventory, Chattel Paper, Accounts, Equipment and General Intangibles; whether any of the foregoing is owned now or acquired later; all accessions, additions, replacements, and substitutions relating to any of the foregoing; all records of any kind relating to any of the foregoing; all proceeds relating to any of the foregoing (including insurance, general intangibles and other accounts proceeds).

**5. ALT DESIGNATION:** ☐LESSEE/LESSOR ☐CONSIGNEE/CONSIGNOR ☐BAILEE/BAILOR ☐SELLER/BUYER ☐AG. LIEN ☐NON-UCC FILING

**6. This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS**
Attach Addendum [if applicable]

**7. Check to REQUEST SEARCH REPORT(S) on Debtor(s)**
[ADDITIONAL FEE]   [optional] ☐All Debtors ☐Debtor 1 ☐Debtor 2

**8. OPTIONAL FILER REFERENCE DATA**

FILING OFFICE COPY

**EXHIBIT 4**

# UCC FINANCING STATEMENT AMENDMENT

**FOLLOW INSTRUCTIONS (front and back) CAREFULLY**

| | |
|---|---|
| A. NAME & PHONE OF CONTACT AT FILER [optional]<br>Gisella Melendez<br>800-331-3282 | |
| B. SEND ACKNOWLEDGMENT TO: (Name and Address)<br>CT LIEN SOLUTIONS<br>2727 ALLEN PARKWAY<br>HOUSTON, TX 77019<br>USA | DOCUMENT NUMBER: 29741060002<br>FILING NUMBER: 11-72780379<br>FILING DATE: 07/25/2011 05:57<br>IMAGE GENERATED ELECTRONICALLY FOR XML FILING<br>THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY |

| | |
|---|---|
| **1a. INITIAL FINANCING STATEMENT FILE #**<br>07-7099199940 | **1b.** ☐ This **FINANCING STATEMENT AMENDMENT** is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. |

**2.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination.

**3.** ☒ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

**4.** ☐ **ASSIGNMENT (full or partial):** Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9.

**5. AMENDMENT (PARTY INFORMATION):** This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these.
Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.

| ☐ CHANGE name and/or address: Please refer to the detailed instructions in regards to changing the name/address of a party. | ☐ DELETE name: Give record name to be deleted in item 6a or 6b. | ☐ ADD name: Complete item 7a or 7b, and also item 7c |
|---|---|---|

**6. CURRENT RECORD INFORMATION:**

| OR | 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| | 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| | | | | |

**7. CHANGED (NEW) OR ADDED INFORMATION:**

| OR | 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| | 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 7d. SEE INSTRUCTIONS | ADD'L DEBTOR INFO | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID#, if any<br>☐ NONE |
|---|---|---|---|---|

**8. AMENDMENT (COLLATERAL CHANGE): check only one box.**
Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

**9. NAME of SECURED PARTY of RECORD AUTHORIZING THIS AMENDMENT** (name of assignor, if this is an Assignment). If this is an Amendment authorized by Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this amendment.

| OR | a. ORGANIZATION'S NAME<br>Wells Fargo Bank, National Associaton | | | |
|---|---|---|---|---|
| | b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

**10. OPTIONAL FILER REFERENCE DATA**

**FILING OFFICE COPY**

EXHIBIT 5

# UCC FINANCING STATEMENT
**FOLLOW INSTRUCTIONS (front and back) CAREFULLY**

**A. NAME & PHONE OF CONTACT AT FILER [optional]**

**B. SEND ACKNOWLEDGEMENT TO: (Name and Address)**
UCC DIRECT SERVICES
2727 ALLEN PARKWAY
HOUSTON, TX 77019
USA

**DOCUMENT NUMBER:** 11375030002
**FILING NUMBER:** 07-7101434513
**FILING DATE:** 02/05/2007 10:58
IMAGE GENERATED ELECTRONICALLY FOR XML FILING
THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names**

| | |
|---|---|
| OR | **1a. ORGANIZATION'S NAME**<br>Braun Development Group, Inc. |

| **1b. INDIVIDUAL'S LAST NAME** | **FIRST NAME** | **MIDDLE NAME** | **SUFFIX** |
|---|---|---|---|
| | | | |

| **1c. MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |
|---|---|---|---|---|
| 13621 South Main Street | Los Angeles | CA | 90061 | USA |

| **1d. SEE INSTRUCTIONS** | **ADD'L DEBTOR INFO** | **1e. TYPE OF ORGANIZATION**<br>Corporation | **1f. JURISDICTION OF ORGANIZATION**<br>CA | **1g. ORGANIZATIONAL ID#, if any**<br>C2958152 ☐ NONE |
|---|---|---|---|---|

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names**

| | |
|---|---|
| OR | **2a. ORGANIZATION'S NAME** |

| **2b. INDIVIDUAL'S LAST NAME** | **FIRST NAME** | **MIDDLE NAME** | **SUFFIX** |
|---|---|---|---|
| | | | |

| **2c. MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |
|---|---|---|---|---|
| | | | | |

| **2d. SEE INSTRUCTIONS** | **ADD'L DEBTOR INFO** | **2e. TYPE OF ORGANIZATION** | **2f. JURISDICTION OF ORGANIZATION** | **2g. ORGANIZATIONAL ID#, if any**<br>☐ NONE |
|---|---|---|---|---|

**3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)**

| | |
|---|---|
| OR | **3a. ORGANIZATION'S NAME**<br>Wells Fargo Bank, National Association |

| **3b. INDIVIDUAL'S LAST NAME** | **FIRST NAME** | **MIDDLE NAME** | **SUFFIX** |
|---|---|---|---|
| | | | |

| **3c. MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |
|---|---|---|---|---|
| 121 Park Center Plaza, 6th Floor | San Jose | CA | 95113 | USA |

**4. This FINANCING STATEMENT covers the following collateral:**
All Inventory, Chattel Paper, Accounts, Equipment and General Intangibles; whether any of the foregoing is owned now or acquired later;
all accessions, additions, replacements, and substitutions relating to any of the foregoing; all records of any kind relating to any
of the foregoing; all proceeds relating to any of the foregoing (including insurance, general intangibles and other accounts proceeds).

**5. ALT DESIGNATION:** ☐ LESSEE/LESSOR ☐ CONSIGNEE/CONSIGNOR ☐ BAILEE/BAILOR ☐ SELLER/BUYER ☐ AG. LIEN ☐ NON-UCC FILING

**6. This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS
Attach Addendum [if applicable]**

**7. Check to REQUEST SEARCH REPORT(S) on Debtor(s)
[ADDITIONAL FEE]    [optional]** ☐ All Debtors ☐ Debtor 1 ☐ Debtor 2

**8. OPTIONAL FILER REFERENCE DATA**

**FILING OFFICE COPY**

EXHIBIT 6

# UCC FINANCING STATEMENT AMENDMENT

**FOLLOW INSTRUCTIONS (front and back) CAREFULLY**

A. NAME & PHONE OF CONTACT AT FILER [optional]
Gisella Melendez
800-331-3282

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

CT LIEN SOLUTIONS
2727 ALLEN PARKWAY
HOUSTON, TX 77019
USA

DOCUMENT NUMBER: 29945740002
FILING NUMBER: 11-72803346
FILING DATE: 08/10/2011 06:28
IMAGE GENERATED ELECTRONICALLY FOR XML FILING
THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY

1a. INITIAL FINANCING STATEMENT FILE #
07-7101434613

1b. ☐ This FINANCING STATEMENT AMENDMENT is to be
filed [for record] (or recorded) in the REAL ESTATE
RECORDS.

2. ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination.

3. ☒ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. ☐ ASSIGNMENT (full or partial): Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9.

5. AMENDMENT (PARTY INFORMATION): This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these.
Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.

| ☐ CHANGE name and/or address: Please refer to the detailed instructions in regards to changing the name/address of a party. | ☐ DELETE name: Give record name to be deleted in item 6a or 6b. | ☐ ADD name: Complete item 7a or 7b, and also item 7c |
|---|---|---|

6. CURRENT RECORD INFORMATION:

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

7. CHANGED (NEW) OR ADDED INFORMATION:

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

| 7d. SEE INSTRUCTIONS | ADD'L DEBTOR INFO | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID#, if any ☐ NONE |
|---|---|---|---|---|

8. AMENDMENT (COLLATERAL CHANGE): check only one box.
Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

9. NAME of SECURED PARTY of RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment). If this is an Amendment authorized by Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this amendment.

| a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR Wells Fargo Bank, National Association | | | |
| b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA

FILING OFFICE COPY

EXHIBIT 7

## UCC FINANCING STATEMENT

**FOLLOW INSTRUCTIONS (front and back) CAREFULLY**

**A. NAME & PHONE OF CONTACT AT FILER [optional]**

**B. SEND ACKNOWLEDGMENT TO: (Name and Address)**
UCC DIRECT SERVICES
2727 ALLEN PARKWAY
HOUSTON, TX 77019
USA

DOCUMENT NUMBER: 20701980002
FILING NUMBER: 09-7193440805
FILING DATE: 04/13/2009 13:49
IMAGE GENERATED ELECTRONICALLY FOR XML FILING
THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names**

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| BRAUN DEVELOPMENT GROUP, INC. | | | | |

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 13621 SOUTH MAIN STREET | LOS ANGELES | CA | 90061 | USA |

| 1d. SEE INSTRUCTIONS | ADD'L DEBTOR INFO | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID#, if any |
|---|---|---|---|---|
| | | Corporation | CA | C2958152  ☐ NONE |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names**

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 2d. SEE INSTRUCTIONS | ADD'L DEBTOR INFO | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID#, if any |
|---|---|---|---|---|
| | | | | ☐ NONE |

**3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)**

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| COMMUNITY BANK | | | | |

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 505 EAST COLORADO BOULEVARD | PASADENA | CA | 91101 | USA |

**4. This FINANCING STATEMENT covers the following collateral:**

All Inventory, Chattel Paper, Accounts, Equipment and General Intangibles; whether any of the foregoing is owned now or acquired later; all accessions, attachments, accessories, tools, parts, supplies, replacements of and additions to any of the collateral described herein, whether added now or later; all products and produce of any of the property; all accounts, general intangibles, instruments, rents, monies, payments, and all other rights, arising out of a sale, lease, or other disposition of any of the property; all proceeds (including insurance proceeds) from the sale, destruction, loss, or other disposition of any of the property, and sums due from a third party who has damaged or destroyed the collateral or from that party's insurer, whether due to judgment, settlement or other process; all records and data relating to any of the property, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of debtor's right, title, and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media.

**5. ALT DESIGNATION:** ☐ LESSEE/LESSOR ☐ CONSIGNEE/CONSIGNOR ☐ BAILEE/BAILOR ☐ SELLER/BUYER ☐ AG. LIEN ☐ NON-UCC FILING

**6. This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS**
Attach Addendum [if applicable]

**7. Check to REQUEST SEARCH REPORT(S) on Debtor(s)**
[ADDITIONAL FEE]    [optional] ☐ All Debtors ☐ Debtor 1 ☐ Debtor 2

**8. OPTIONAL FILER REFERENCE DATA**

FILING OFFICE COPY

## UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER [optional]**
Gisella Melendez
800-331-3282

**B. SEND ACKNOWLEDGMENT TO: (Name and Address)**
CT LIEN SOLUTIONS
2727 ALLEN PARKWAY
HOUSTON, TX 77019
USA

DOCUMENT NUMBER: 40672460002
FILING NUMBER: 13-73901193
FILING DATE: 12/10/2013 13:39
IMAGE GENERATED ELECTRONICALLY FOR XML FILING
THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY

**1a. INITIAL FINANCING STATEMENT FILE #**
09-7193440805

**1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.

**2.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination.

**3.** ☒ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

**4.** ☐ **ASSIGNMENT (full or partial):** Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9.

**5. AMENDMENT (PARTY INFORMATION):** This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these.
Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.

☐ CHANGE name and/or address: Please refer to the detailed instructions in regards to changing the name/address of a party. | ☐ DELETE name: Give record name to be deleted in item 6a or 6b. | ☐ ADD name: Complete item 7a or 7b, and also item 7c

**6. CURRENT RECORD INFORMATION:**

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| | | | |

**7. CHANGED (NEW) OR ADDED INFORMATION:**

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

| 7d. SEE INSTRUCTIONS | ADD'L DEBTOR INFO | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID#, if any ☐ NONE |
|---|---|---|---|---|

**8. AMENDMENT (COLLATERAL CHANGE):** check only one box.
Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

**9. NAME of SECURED PARTY of RECORD AUTHORIZING THIS AMENDMENT** (name of assignor, if this is an Assignment). If this is an Amendment authorized by Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this amendment.

| a. ORGANIZATION'S NAME |
|---|
| COMMUNITY BANK |

| OR b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

**10. OPTIONAL FILER REFERENCE DATA**

FILING OFFICE COPY

# UCC FINANCING STATEMENT
**FOLLOW INSTRUCTIONS (front and back) CAREFULLY**

**A. NAME & PHONE OF CONTACT AT FILER [optional]**

5033099862

**B. SEND ACKNOWLEDGMENT TO: (Name and Address)**
Global Trading Partners, Inc.
152 N Cedros Ave
Solana Beach, ca 92075
USA

**DOCUMENT NUMBER: 35292140002**
**FILING NUMBER: 12-7336072596**
**FILING DATE: 11/07/2012 12:51**
**IMAGE GENERATED ELECTRONICALLY FOR WEB FILING**
**THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY**

**1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names**

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| BRAUN DEVELOPMENT GROUP, INC. | | | |

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 13621 S Main Street | Los Angeles | CA | 90061 | USA |

| 1d. SEE INSTRUCTIONS | ADD'L DEBTOR INFO | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID#, if any |
|---|---|---|---|---|
| | | Corporation | Californ ia | C2958152    ☐NONE |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names**

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| | | | |

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 2d. SEE INSTRUCTIONS | ADD'L DEBTOR INFO | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID#, if any |
|---|---|---|---|---|
| | | | | ☐NONE |

**3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)**

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| GLOBAL TRADING PARTNERS, INC. | | | |

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 152 Cedros Ave | Solana Beach | CA | 92075 | USA |

**4. This FINANCING STATEMENT covers the following collateral:**
This FINANCING STATEMENT covers the following collateral:

Debtor hereby grants Secured Party a security interest in all of the following, whether now owned or hereafter acquired, and wherever located, as collateral for the payment and performance of all present and future indebtedness, liabilities, guarantees and obligations of Debtor to Secured Party: (a) All accounts, contract rights, chattel paper, letters of credit, documents, securities, money, and instruments, and all other obligations now or in the future owing to the Debtor; (b) All inventory, goods, merchandise, materials, raw materials, work in process, finished goods, farm products, advertising, packaging and shipping materials, supplies, and all other tangible personal property which is held for sale or lease or furnished under contracts of service or consumed in the Debtor's business, and all warehouse receipts and other documents; and (c) All equipment, including without limitation all machinery, fixtures,

**5. ALT DESIGNATION:** ☐LESSEE/LESSOR ☐CONSIGNEE/CONSIGNOR ☐BAILEE/BAILOR ☐SELLER/BUYER ☐AG. LIEN ☐NON-UCC FILING

| ☐6. This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS Attach Addendum [if applicable] | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]    [optional] ☐All Debtors ☐Debtor 1 ☐Debtor 2 |
|---|---|

**8. OPTIONAL FILER REFERENCE DATA**

**FILING OFFICE COPY**

# UCC FINANCING STATEMENT ADDENDUM

**FOLLOW INSTRUCTIONS (front and back) CAREFULLY**

**9. NAME OF FIRST DEBTOR (1a or 1b) ON RELATED FINANCING STATEMENT**

**9a. ORGANIZATION'S NAME**
BRAUN DEVELOPMENT GROUP, INC.

OR **9b. INDIVIDUAL'S LAST NAME** | **FIRST NAME** | **MIDDLE NAME, SUFFIX**

**10. MISCELLANEOUS:**

DOCUMENT NUMBER: 35292140002
IMAGE GENERATED ELECTRONICALLY FOR WEB FILING
THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY

**11. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names**

OR **11a. ORGANIZATION'S NAME**

| **11b. INDIVIDUAL'S LAST NAME** | **FIRST NAME** | **MIDDLE NAME** | **SUFFIX** |
|---|---|---|---|
| **11c. MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |

| **11d. SEE INSTRUCTIONS** | **ADD'L DEBTOR INFO** | **11e. TYPE OF ORGANIZATION** | **11f. JURISDICTION OF ORGANIZATION** | **11g. ORGANIZATIONAL ID#, if any** ☐NONE |

**12. ☐ ADDITIONAL SECURED PARTY'S or ☐ ASSIGNOR S/P'S NAME - insert only one name (12a or 12b)**

OR **12a. ORGANIZATION'S NAME**

| **12b. INDIVIDUAL'S LAST NAME** | **FIRST NAME** | **MIDDLE NAME** | **SUFFIX** |
|---|---|---|---|
| **12c. MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |

**13. This FINANCING STATEMENT covers ☐ timber to be cut or ☐ as-extracted collateral, or is filed as a ☐ fixture filing.**

**14. Description of real estate:**

**16. Additional collateral description:**

trade fixtures, vehicles, furnishings, furniture, materials, tools, machine tools, office equipment, computers and peripheral devices, appliances, apparatus, parts, dies, and jigs; (d) all general intangibles including, but not limited to, deposit accounts, goodwill, names, trade names, trademarks and the goodwill of the business symbolized thereby, trade secrets, drawings, customer lists, patents, patent applications, copyrights, security deposits, federal, state and local tax refunds and claims, all rights in all litigation presently or hereafter pending for any cause or claim (whether in contract,

**15. Name and address of RECORD OWNER of above-described real estate**
**(if Debtor does not have a record interest):**

**17. Check only if applicable and check only one box.**
Debtor is a ☐ Trust or ☐ Trustee acting with respect to property held in trust or ☐ Decedent's Estate

**18. Check only if applicable and check only one box.**
☐ Debtor is a TRANSMITTING UTILITY
☐ Filed in connection with a Manufactured-Home Transaction - effective 30 years
☐ Filed in connection with a Public-Finance Transaction - effective 30 years

FILING OFFICE COPY

Page 3

# UCC FINANCING STATEMENT ADDENDUM

**FOLLOW INSTRUCTIONS (front and back) CAREFULLY**

| 1. NAME OF FIRST DEBTOR (1a or 1b) ON RELATED FINANCING STATEMENT | | |
|---|---|---|
| 1a. ORGANIZATION'S NAME<br>BRAUN DEVELOPMENT GROUP, INC. | | |
| OR 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME, SUFFIX |

**2. MISCELLANEOUS:**

DOCUMENT NUMBER: 35292140002
IMAGE GENERATED ELECTRONICALLY FOR WEB FILING
THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY

**3. This FINANCING STATEMENT covers the following collateral:**

tort or otherwise), and all judgments now or hereafter arising therefrom, all claims of Debtor
against Secured Party, all rights to purchase or sell real or personal property, all rights as a
licensor or licensee of any kind, all royalties, licenses, processes, telephone numbers, proprietary
information, purchase orders, and all insurance policies and claims (including without limitation
credit, liability, property and other insurance), and all other rights, privileges and franchises of
any kind; (e) All books and records, whether stored on computers or otherwise maintained.

**FILING OFFICE COPY**

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER [optional]**
JOHN KERKHOFF

**B. SEND ACKNOWLEDGMENT TO:** (Name and Address)

Return acknowledgment to:

★

Capitol Corporate Services, Inc.
455 Capitol Mall Ste 217, Sacramento CA 95814
800/327-4842

**13-7343577323**
**12/31/2012 15:54**

**FILED**
CALIFORNIA
SOS   SECRETARY OF STATE

36012570002   UCC 1 FILING

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| BRAUN DEVELOPMENT GROUP, INC. | | | |

| OR | 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|---|

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 13621 S MAIN ST | LOS ANGELES | CA | 90061 | USA |

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | CORPORATION | CALIFORNIA | C2958152   ☐ NONE |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|

| OR | 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|---|

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | ☐ NONE |

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| BRIAR CAPITAL, LP | | | |

| OR | 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|---|

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 1500 CITYWEST BLVD | HOUSTON | TX | 77042 | |

**4. This FINANCING STATEMENT covers the following collateral:**

ALL RIGHT, TITLE AND INTEREST IN AND TO EACH OF THE FOLLOWING, WHEREVER
LOCATED AND WHETHER NOW OR HEREAFTER EXISTING OR NOW OWNED OR HEREAFTER
ACQUIRED OR ARISING: ACCOUNTS; CHATTEL PAPER; COMMERCIAL TORT CLAIMS; DEPOSIT
ACCOUNTS; DOCUMENTS; EQUIPMENT; GENERAL INTANGIBLES; GOODS (INCLUDING BUT NOT
LIMITED TO ALL FILES, CORRESPONDENCE, COMPUTER PROGRAMS, TAPES, DISKS AND
RELATED DATA PROCESSING SOFTWARE WHICH CONTAIN INFORMATION IDENTIFYING OR
PERTAINING TO ANY OF THE COLLATERAL OR ANY ACCOUNT DEBTOR OR SHOWING THE
AMOUNTS THEREOF OR PAYMENTS THEREON OR OTHERWISE NECESSARY OR HELPFUL IN THE
REALIZATION THEREON OR THE COLLECTION THEREOF); INVENTORY; PROCEEDS OF
INVENTORY; INVESTMENTS; LETTERS OF CREDIT AND LETTER OF CREDIT RIGHTS; AND ALL
SUPPORTING OBLIGATIONS.  ALL THE ABOVE WHETHER NOW OWNED OR HEREAFTER
ACQUIRED.

| 5. ALTERNATIVE DESIGNATION (if applicable): | ☐ LESSEE/LESSOR | ☐ CONSIGNEE/CONSIGNOR | ☐ BAILEE/BAILOR | ☐ SELLER/BUYER | ☐ AG. LIEN | ☐ NON-UCC FILING |
|---|---|---|---|---|---|---|

| 6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.   Attach Addendum | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]   [optional] | ☐ All Debtors | ☐ Debtor 1 | ☐ Debtor 2 |
|---|---|---|---|---|

**8. OPTIONAL FILER REFERENCE DATA**
BRAUN DEVELOPMENT DBA ARTWEAR - CA - STATE

FILING OFFICE COPY — UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)   Capitol Services, Inc.

1 / 1

640706

# UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
Corporation Service Company
800-858-5294

B. E-MAIL CONTACT AT FILER (optional)

C. SEND ACKNOWLEDGMENT TO: (Name and Address)
CORPORATION SERVICE COMPANY
801 ADLAI STEVENSON DRIVE
SPRINGFIELD, IL 62703
USA

DOCUMENT NUMBER: 43838230002
FILING NUMBER: 14-7419360580
FILING DATE: 07/09/2014 14:03

IMAGE GENERATED ELECTRONICALLY FOR XML FILING
THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| BRAUN DEVELOPMENT GROUP, INC. | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 13621 South Main Street | Los Angeles | CA | 90061 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| Corporation Service Company, As Representative | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| P.O. BOX 2576 UCCSPREP@cscinfo.com | Springfield | IL | 62708 | USA |

4. COLLATERAL: This financing statement covers the following collateral:
The collateral includes the following property that Debtor now owns or shall acquire or create immediately upon the acquisition or creation thereof: (i) any and all amounts owing to Debtor now or in the future from any merchant processor(s) processing charges made by customers of Debtor via credit card or debit card transactions; and (ii) all other tangible and intangible personal property, including, but not limited to (a) inventory, (b) equipment, (c) investment property, including certificated and uncertificated securities, securities accounts, security entitlements, commodity contracts and commodity accounts, (d) instruments, including promissory notes (e) chattel paper, including tangible chattel paper and electronic chattel paper, (f) documents, (g) letter of credit rights, (h) accounts, including health care insurance receivables, (i) deposit accounts, (j) general intangibles, including payment intangibles and software and (k) as extracted collateral as such terms may from time to time be defined in the Uniform Commercial Code. The collateral includes all accessions, attachments, accessories, parts, supplies and replacements for the collateral, all products,

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and instructions)   ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction   ☐ Manufactured-Home Transaction   ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien   ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor   ☐ Consignee/Consignor   ☐ Seller/Buyer   ☐ Bailee/Bailor   ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:

FILING OFFICE COPY

# UCC FINANCING STATEMENT ADDENDUM

FOLLOW INSTRUCTIONS

9. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

| | |
|---|---|
| 9a. ORGANIZATION'S NAME | |
| **BRAUN DEVELOPMENT GROUP, INC.** | |

OR

9b. INDIVIDUAL'S SURNAME

FIRST PERSONAL NAME

ADDITIONAL NAME(S)/INITIAL(S)  SUFFIX

**DOCUMENT NUMBER: 43838230002**

IMAGE GENERATED ELECTRONICALLY FOR XML FILING
THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY

10. DEBTOR'S NAME: Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

10a. ORGANIZATION'S NAME

10b. INDIVIDUAL'S SURNAME

OR    INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S)  SUFFIX

| 10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

11. ☐ ADDITIONAL SECURED PARTY'S NAME or ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (11a or 11b)

11a. ORGANIZATION'S NAME

OR

| 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

12. ADDITIONAL SPACE FOR ITEM 4 (collateral):
proceeds and collections thereof and all records and data relating thereto.

Debtor has contractually agreed not to pledge, mortgage, encumber or otherwise permit the collateral to be subject to any other lien, security interest, encumbrance or charge. Accordingly, the acceptance of any security interest by anyone other than the Secured Party will constitute the tortious interference with the Secured Party's rights. Additionally, if Debtor takes additional financing from a credit card advance, cash advance company or an additional working capital or similar loan, it shall be an event of default pursuant to Debtor's agreement with the Secured Party and likewise constitute tortious interference with the Secured Party's rights. In the event that any entity is granted a security interest in the collateral contrary to the above or takes an action causing an event of default, the Secured Party asserts a claim to any proceeds thereof received by such entity.

13. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS (if applicable)

14. This FINANCING STATEMENT:
☐ covers timber to be cut  ☐ covers as-extracted collateral  ☐ is filed as a fixture filing

15. Name and address of RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest):

16. Description of real estate:

17. MISCELLANEOUS:

FILING OFFICE COPY