RAFFI KHATCHADOURIAN (SBN 193165)
**HEMAR, ROUSSO & HEALD, LLP**
15910 Ventura Boulevard, 12th Floor
Encino, California 91436
Telephone:   (818) 501-3800
Facsimile:   (818) 501-2985

Attorneys for Secured Creditor,
WELLS FARGO BANK, NATIONAL ASSOCIATION

### UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF CALIFORNIA
### LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>BRAUN DEVELOPMENT GROUP, INC.,<br><br>Debtor. | Case No. 2:14-24711-ER<br><br>Chapter 11<br><br>**STIPULATION REGARDING USE OF CASH COLLATERAL AND ADEQUATE PROTECTION**<br><br><u>Continued Hearing</u><br>Date:        October 18, 2014<br>Time:        10:00 a.m.<br>Judge:       Hon. Ernest M. Robles<br>Courtroom:  1568<br>Floor:       15th |

This Stipulation Regarding Use of Cash Collateral and Adequate Protection (the "Stipulation") is entered into by and between BRAUN DEVELOPMENT GROUP, INC., the debtor and debtor-in-possession herein (the "Debtor"), and secured creditor, Wells Fargo Bank, National Association ("Wells Fargo"), with reference to the following facts:

### RECITALS

A.    **Petition.** On July 31, 2014, (the "Petition Date"), the Debtor commenced the above-captioned bankruptcy case (the "Bankruptcy Case") by filing a voluntary petition under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Central District of California (the "Court"). The Debtor is continuing in

possession of its property, and operating and managing its business, as debtor-in-possession pursuant to Bankruptcy Code sections 1107 and 1108.

**B.     Jurisdiction and Venue.** This Court has jurisdiction over the Bankruptcy Case, and the parties and property affected thereby, pursuant to 28 U.S.C. §§ 157(b) and 1334. This proceeding constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2). Venue for this Bankruptcy Case is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

**C.     Debtor.** The Debtor owns and operates a certain business currently located at 13621 Main Street, Los Angeles, CA 90061, whose assets (including but not limited to its accounts, inventory, equipment and accounts receivable) are secured by a lien in favor of Wells Fargo (the "Wells Fargo Property").

**D.     Wells Fargo's Loans.** Wells Fargo is the lender on two loans to Debtor.

1.     On or about December 26, 2006, Wells Fargo and Debtor entered into a Commercial Security Agreement and Promissory Note (sometimes collectively referred to herein as the "Loan"), whereby Debtor borrowed and promised to pay to Wells Fargo the principal sum of $546,800.00, together with interest at a variable rate, as stated in the Note.

2.     The balance due pursuant to the Loan is $160,467.03 as of August 15, 2014. The principal and interest payment on the Loan is currently $6,100.77. The Loan is currently due for the August 15, 2014, principal and interest payment.

3.     The Commercial Security Agreement pledged all of Debtor's tangible and intangible business assets as collateral for the Loan. Wells Fargo perfected a first priority security interest in the Collateral on account of the Loan by filing a UCC-1 Financing Statement with the California Secretary of State, and subsequently filing a UCC-1 Continuation Statement.

4.     On or about February 6, 2007, Wells Fargo and Debtor entered into a Line of Credit Agreement and Security Agreement (hereinafter collectively the "Line of Credit"), whereby Debtor borrowed and promised to pay to Wells Fargo the principal sum of $100,000.00, together with interest at a variable rate, as stated in the Line of Credit.

5.     The balance due pursuant to the Line of Credit is $50,267.23 as of August 15, 2014. The principal and interest payment on the Line of Credit is currently $1,939.00. The Line of Credit

1 is current, with the next principal and interest payment due on August 22, 2014.

2       6.      The Commercial Security Agreement pledged all of Debtor's tangible and intangible business assets as collateral for the Line of Credit. Wells Fargo perfected a second priority security interest in the Collateral on account of the Line of Credit by filing a UCC-1 Financing Statement with the California Secretary of State, and subsequently filing a UCC-1 Continuation Statement.

      7.      By virtue of the referenced Security Agreements and Financing Statements, Wells Fargo has first and second priority liens on the Debtor's rents, issues and profits generated by the Wells Fargo Property (together with the Wells Fargo Property, the "Prepetition Wells Fargo Collateral"). The Loan and Line of Credit documents shall collectively be referred to as the Wells Fargo Loan Documents. All of the Debtor's cash and proceeds generated by the Prepetition Wells Fargo Collateral is "cash collateral" of Wells Fargo within the meaning of Bankruptcy Code Section 363(a).

      E.      **Need for and Use of Cash Collateral.** As a result of Wells Fargo's liens upon, and security interests in, the Prepetition Wells Fargo Collateral, and by virtue of Bankruptcy Code section 363(c)(2), the Debtor is unable to use the Cash Collateral without the consent of Wells Fargo or the authorization of the Court after notice and a hearing. The Debtor requests entry of an order of the Court approving this Stipulation pursuant to Bankruptcy Rule 4001(b)(2) (the "Approval Order"), to allow the Debtor the use of Cash Collateral (as defined below) for the preservation of the bankruptcy estate and the maintenance and continued operation of the Wells Fargo Property.

      F.      **Anticipated Use of Cash Collateral.** Debtor has requested, and subject to Court approval, Wells Fargo has consented to Debtor's use of Cash Collateral for purposes described in the Budget attached hereto as Exhibit A, subject to the terms of this Stipulation, from the Petition Date through October 22, 2014.

      G.      **NOW, THEREFORE**, based upon the foregoing and good cause appearing therefor, IT IS HEREBY STIPULATED, CONSENTED TO AND AGREED by and among the Debtor and Wells Fargo as follows:

\\\

## **STIPULATION**

1. Incorporation. The recitals contained above are incorporated herein by this reference.

2. Indebtedness. The Debtor hereby acknowledges and agrees that the Debtor is liable to Wells Fargo in the amount of the Prepetition Wells Fargo Indebtedness plus amounts accruing post-petition pursuant to the terms of the Loan Documents relating to the Wells Fargo Property.

3. Validity of Claims. The Debtor acknowledges and agrees to the following:

   a. The Prepetition Wells Fargo Indebtedness constitutes an allowed claim under the Bankruptcy Code.

   b. The Prepetition Wells Fargo Indebtedness is secured by valid, perfected and indefeasible, first and second priority security interests in the Prepetition Wells Fargo Collateral.

4. Collection and Use of Cash Collateral.

   a. "Cash Collateral" Defined. "Cash Collateral" includes, without limitation, all cash, negotiable instruments, documents of title, securities, chattel paper, deposit accounts, or other cash equivalents whenever acquired in which the Debtor has an interest, and includes any and all proceeds, products, offspring, rents or profits of property and all fees, charges, accounts or other payments on the Prepetition Wells Fargo Collateral or otherwise generated by or derived from the Prepetition Wells Fargo Collateral (collectively, "Cash Collateral").

   b. Permitted Use of Cash Collateral. Subject to the terms of this Stipulation and the Approval Order, Wells Fargo hereby consents to Debtor's use of Cash Collateral, solely for the purposes and in the total amounts set forth in the Budget (the "Budget") attached hereto as Exhibit A and incorporated by this reference. Debtor and Wells Fargo may agree to any amendments or modifications to the Budget or Budget Period (defined below) subject to further order of the Bankruptcy Court. Debtor shall deposit all Cash Collateral, in kind, into a debtor in possession account which has been established for the Wells Fargo Property. The Debtor shall be permitted to exceed the disbursements forecasted in the Budget by up to 10% on a line-by-line basis and to exceed aggregate disbursements forecasted in the Budget by a total of 10% during the Budget Period. Wells Fargo acknowledges that the Budget items set forth as "Cost of Goods Sold" increase as Debtor's sales increase, and Debtor is authorized to increase its expenditures without prior

1  notification to Wells Fargo as long as the total expenditures do not exceed 50% of sales in a
2  particular month.
3       c.     Budgeted Use of Cash Collateral. Debtor may use the Cash Collateral up to the
4  amount and for the specific purposes set forth in the Budgets for the Period commencing nunc pro
5  tunc from the Petition Date through October 22, 2014, or such later date as may be agreed to in
6  writing by Wells Fargo and Debtor and approved by the Court (the "Budget Period"). The Budget
7  shall exclude any compensation to "insiders" as defined by the Bankruptcy Code without prior
8  notice pursuant to the Local Bankruptcy Rules. The Budget shall exclude any compensation to
9  Debtor's professionals, including without limitation counsel and advisors for the Debtor, without
10 prior Court Order authorizing such compensation.
11      d.     Reporting. The Debtor agrees to provide to Wells Fargo and Wells Fargo's counsel
12 by the fifteenth day of the successive month the following:
13           i.     A Cash Balance Report (showing deposits and disbursements) and a Variance
14           Report (comparing Budget to actual figures) (collectively, the "Cash Collateral
15           Reports"), covering the prior month period; and
16           ii.     The Debtor's monthly operating reports, which the Debtor is required to file
17           the U.S. Trustee, for the months in the Budget Period (each, a "Monthly Operation
18           Report," and together with the Cash Collateral Reports, the "Reports").
19     The Reports shall be e-mailed to Wells Fargo's Counsel, as follows:
20         Raffi Khatchadourian, Esq.
21         Hemar, Rousso & Heald, LLP
22         15910 Ventura Boulevard, 12th Floor
23         Encino, CA. 91436
24         E-mail: raffi@hemar-rousso.com
25      5.     Adequate Protection Payments to Wells Fargo. As and for adequate protection of
26 Wells Fargo's interest in and consent to use of the Cash Collateral and as security for the Debtor's
27 performance under this Stipulation, the Debtor shall make aggregate monthly payments for the
28 Wells Fargo Property in an amount equal to the contractual scheduled monthly payment required

under the Wells Fargo Loan Documents on Prepetition Wells Fargo Indebtedness (each, an "Adequate Protection Payment" and collectively, the "Adequate Protection Payments"), payable on the 15th day of the month pursuant to the Loan, and the 22nd day of the month pursuant to the Line of Credit, each month during the Budget Period (the "Payment Day"). The aggregate payment amount for both Wells Fargo Loans is currently $8,039.77, subject to adjustment pursuant to the Wells Fargo Loan Documents, and Debtor shall make all Adequate Protection Payments coming due since the Petition Date no later than August 22, 2014.

6.  Further Adequate Protection of Wells Fargo's Interests. As protection for any diminution in value of the interests of Wells Fargo, in compliance with section 506(b) of the Bankruptcy Code, and in consideration of consent to the Debtor's use of the Cash Collateral as set forth in this Stipulation:

a.  Wells Fargo is hereby granted a replacement lien (the "Replacement Lien") on the Wells Fargo Property, including the rents, proceeds and profits thereof (collectively, the "Post-Petition Collateral"), with such Replacement Lien being a perfected security interest in and to the Postpetition Collateral having the same extent, validity and priority Wells Fargo had in the Prepetition Wells Fargo Collateral on the Petition Date. The Replacement Lien shall be valid, perfected, and enforceable as of the Petition Date without any further action by Debtor and Wells Fargo and without the execution, filing, or recording of any financing statements, security agreements, deeds of trust or other documents.

b.  Under Section 507(b) of the Bankruptcy Code, if the protection granted above is insufficient to satisfy in full the claims of Wells Fargo, Wells Fargo will be granted an allowed claim under Section 503(b) of the Bankruptcy Code in the amount of any such insufficiency. Such claim shall have the super-priority provided by Section 507(b) of the Bankruptcy Code, and no claim for costs or expenses of administration that have been or may be incurred in this case, any conversion of this case to a case under chapter 7 of the Bankruptcy Code, or otherwise, and no priority claims, are or will be senior to or on a parity with any such claim of Wells Fargo, subject only to fees payable to the U.S. Trustee under 28 U.S.C. § 1930 and fees or costs owing to the Clerk of the Court.

7. **Access to Collateral.** In order to provide further adequate protection to Wells Fargo for Debtor's use of Cash Collateral, Debtor:

    a. Shall permit Wells Fargo and its agents access to inspect the Collateral, as that term is defined in the Wells Fargo Loan Documents, on 48 hours' notice to the Debtor; and

    b. Shall keep the Collateral insured as required by the Wells Fargo Loan Documents.

8. **No Post-Petition Debt; No Other Liens.** The Debtor represents that it will not incur any post-petition indebtedness (except in the ordinary course of the Debtor's business as heretofore conducted), whether pursuant to section 364 of the Bankruptcy Code or otherwise, other than post-petition professional fees and costs, and fees to the U.S. Trustee, and agrees not to seek court approval of any such post-petition indebtedness on an ex parte or shortened notice basis except with prior notice to Wells Fargo.

9. **No Implied Authorization.** Except for transactions in the ordinary course of business or as authorized by the Court, the Debtor shall not sell, transfer, lease, encumber, or otherwise dispose of any of the property of its estate without the prior written consent of Wells Fargo, and no such consent shall ever be implied from any other action, inaction, or acquiescence by Wells Fargo.

10. **Events of Default.** The occurrence of anyone or more of the following events shall constitute an "Event of Default" under this Stipulation: (i) Debtor fails to perform any of his obligations in accordance with the terms hereof or otherwise defaults hereunder or breaches any provision hereof, including (A) the use and disbursement of Cash Collateral except as expressly permitted hereunder; (B) the actual expenditure of Cash Collateral by the Debtor in excess of the budgeted expenditure in the Budget, without the written consent of Wells Fargo or order of the Court; (C) the failure to provide any report, document, or information to Wells Fargo as required hereby; and (D) the failure to make any payment to Wells Fargo as required hereby; (ii) either of Debtor's exclusive periods to file and solicit acceptances of a plan is terminated or lifted under Bankruptcy Code Section 1121; (iii) a trustee is appointed or elected, or an examiner with the power to operate Debtor's business is appointed, in the Bankruptcy Case; (iv) the Bankruptcy Case is converted to a case under Chapter 7 or is dismissed; (v) the Approval Order or this Stipulation is reversed, vacated, stayed, amended, or supplemented without the consent of Wells Fargo; (vi) relief

1 from the automatic stay is granted to any party to permit the exercise of remedies with respect to any
2 property of Debtor's estate; (vii) any material representation or warranty, express or implied, made
3 by Debtor in any certificate, report, expense statement, other financial statement, or other document
4 delivered to Wells Fargo after the Petition Date proves to have been false or misleading in any
5 material respect as of the time when made or given (including by omission of material information
6 necessary to make such representation, warranty, or statement not misleading).

7     11. **Remedies Upon Default.** If an Event of Default occurs under this Stipulation, Wells
8 Fargo shall give written notice via facsimile or overnight express of any such default to Debtor's
9 counsel of record in the Bankruptcy Case by electronic mail or facsimile (the "Default Notice").
10 Upon receipt of such notice, Debtor shall have three (3) business days to cure the Event of Default.

11     12. **Effect of Default.** Upon the expiration of the third business day after delivery of the
12 Default Notice, if Debtor has not (i) cured the Event of Default that is the subject of the Default
13 Notice, or (ii) noticed an expedited hearing before the Court with respect to the Event of Default
14 that is the subject of the Default Notice, Debtor's rights to use Cash Collateral shall immediately
15 cease without further notice. Furthermore, the Debtor shall hold and segregate all Cash Collateral in
16 trust for Wells Fargo.

17     13. **Right to Terminate Use of Cash Collateral.** Regardless of the occurrence of any
18 Event of Default, Wells Fargo may move the Court on five (5) days' notice for an order terminating
19 the Debtor's right to use Cash Collateral for any appropriate reason, including, but not limited to,
20 lack of adequate protection, relief from the automatic stay being granted to any party to permit the
21 exercise of remedies with respect to any property of Debtor's estate, failure to obtain Court approval
22 of the terms of this Stipulation, and/or the occurrence of one of the events set forth in paragraph 10
23 hereof.

24     14. **Non-Budgeted Expenditures.** In the event Debtor wishes to make an expenditure of
25 Cash Collateral not expressly provided for in the Budget, Debtor shall notify Wells Fargo five (5)
26 calendar days before payment or use of Cash Collateral in writing of the amount and nature of the
27 proposed expenditure and provide to Wells Fargo such supporting documentation as may be
28 necessary for Wells Fargo to evaluate the necessity and propriety of the proposed expense. In the

event that the Debtor does not receive written approval from Wells Fargo for the proposed use within five (5) business days of the request, the request shall be deemed denied by Wells Fargo. In the event that Wells Fargo consents in writing to Debtor's expenditure of Cash Collateral, which consent shall be in the sole and absolute discretion, opinion and judgment of Wells Fargo, then Debtor shall be entitled to expend Cash Collateral subject to the terms of this Agreement as authorized by Wells Fargo in writing. In the event that the Debtor's request is denied by Wells Fargo in writing, the Debtor shall not use Cash Collateral to pay that expense absent an order of the Court, and Wells Fargo agrees that the Debtor may present its request to the Court on an emergency or ex parte basis.

15.  Section 364(e) of the Bankruptcy Code. Having been found to have acted in good faith in agreeing to the terms of this Stipulation, Wells Fargo shall be entitled to the full protection of Section 364(e) of the Bankruptcy Code with respect to the Debtor's grant of the Replacement Lien created and authorized by this Stipulation in the event that this Stipulation or any authorization contained in this Stipulation is stayed, vacated, reversed, or modified on appeal. Any stay, modification, reversal, or vacating of this Stipulation will not affect the validity of any obligation of the Debtor incurred under this Stipulation.

16.  506(c) Waiver. The Debtor, on behalf of itself and its estate, shall not seek any right to surcharge Wells Fargo under Section 506(c) of the Bankruptcy Code or other applicable law for any fees or compensation to attorneys or other professionals employed by the Debtor.

17.  No Deemed Lender Control. Wells Fargo shall not be deemed to be in "control" of the operations of the Debtor, or to be acting as a "responsible person" or "owner" or "operator" with respect to the operation or management of the Debtor solely by reason of any credit extended to Debtor under the Wells Fargo Loan Documents, or the grant to and/or exercise by any successor-in-interest of any rights or remedies hereunder or thereunder.

18.  Authorization to Sign Documents. The Debtor is authorized to sign such documents and to take all actions necessary to effectuate the relief granted pursuant to this Stipulation. To the extent this Stipulation is inconsistent with any prior order or pleading with respect to the use of Cash Collateral or grant of adequate protection in this case, the terms of this Stipulation shall

1 | govern.

2 | 19.   Reservation of Rights.  This Stipulation and the Approval Order do not prejudice the right of Wells Fargo to seek relief from the automatic stay of Section 362 of the Bankruptcy Code, or any other relief in this case, including demands for further adequate protection, objections and claims relating to applications or motions for adequate protection, or the use, sale, or other disposition of the Cash Collateral or the Post-Petition Collateral.  This Stipulation is also without prejudice to the rights of any party to oppose any such relief requested. Except as otherwise expressly set forth in this Stipulation, this Stipulation is not a waiver or modification of any of the rights of Wells Fargo, including by way of example and without limitation all rights set forth in the Wells Fargo Loan Documents, and Wells Fargo does not have any obligation or duty to any other entity to exercise any of its rights, remedies, claims, powers, benefits, and privileges. Delay in or failure to exercise any of its rights, remedies, claims, powers, benefits, or privileges does not constitute a waiver, nor subject Wells Fargo to any liability to any entity, and no other entity may rely upon any such delay or failure or in any way seek to assert a defense to any obligation owing based on any such delay or failure.

20.   Successors and Assigns; Survival.  The provisions of this Stipulation shall be binding and inure to the benefit of Wells Fargo, the Debtor and its estate, and the respective successors and assigns of each of the foregoing (including, but not limited to, any trustee or trustees hereafter appointed or elected under any chapter or section of the Bankruptcy Code as a representative of Debtor's estate).

21.   Modification of Stipulation and Effect of Modification of Order.  The terms and conditions set forth in this Stipulation may not be altered, modified, or affected without the prior written consent of the Debtor and Wells Fargo. If any or all of the provisions of the Approval Order are hereafter modified, vacated, terminated, amended or stayed, the consent to Debtor's use of Cash Collateral shall cease immediately thereupon; provided, however, that no such occurrence shall affect, limit or modify (a) the validity of any claim for any amounts of Cash Collateral used pursuant to this Stipulation and the Approval Order, or (b) the validity, enforceability, priority or perfection of any lien or security interest granted under this Stipulation and the Approval Order.

22. **Court Approval.** This Stipulation is subject to approval of the Court pursuant to Federal Rule of Bankruptcy Procedure 4001(d).

23. **Unenforceability.** If the Court does not approve this Stipulation for any reason, then this Stipulation has no effect, and neither the Stipulation nor any action or procedure taken, nor any statement made, in connection with the negotiation, preparation, formulation or seeking approval of this Stipulation may be referred to by any entity in connection with any proceeding or action, whether in this case or elsewhere.

24. **No Agreement to Provide Financial Accommodation.** No provision of this Stipulation and the Approval Order shall in any way impose upon Wells Fargo any duty or obligation to provide any financing or financial accommodation to Debtor or any other party, to collect, sell, lease or otherwise dispose of any of Wells Fargo's collateral, to proceed against any party, person, individual or entity to proceed against or exhaust any security held by Wells Fargo, or any other party, person, individual or entity, or to otherwise pursue any action, right or remedy in Wells Fargo's power whatsoever.

25. **Consent and Mutual Agreement.** Whenever any action may be taken under this Stipulation upon the prior written consent of Wells Fargo or the prior mutual written agreement of the parties, the action may be taken without any further notice or action or order of the Court.

26. **Neutral Construction.** Each of the parties hereto has been involved in the negotiation, review, and execution of this Stipulation, and each has had the opportunity to receive independent legal advice from attorneys of its choice with respect to the advisability of making and executing this Stipulation. In the event of any dispute or controversy regarding this Stipulation, the parties hereto shall be considered to be the joint authors of this Stipulation, and no provision of this Stipulation and the Approval Order shall be interpreted against a party hereto because of authorship.

27. **Headings.** The parties acknowledge that the headings set forth herein are for convenience only and shall not be used to limit, define, or interpret the rights and responsibilities of the parties hereunder.

28. **Power of Representatives.** Any party executing this Stipulation and Approval Order in a representative capacity warrants that he or she is duly authorized and empowered to do so.

29. **Survival of Obligations.** The provisions of this Stipulation and any actions taken in accordance with this Stipulation shall survive entry of any order that may be entered: (a) confirming any plan in any case of any Debtor; (b) converting this Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code; or (c) dismissing this case. Unless otherwise ordered by the Court, the claims and liens on the Cash Collateral and the Post-Petition Collateral continue in full force and effect and maintain their priority until all the obligations owed under the terms of the Wells Fargo Loan Documents and this Stipulation are paid in full.

30. **Counterpart.** This Stipulation may be executed in counterparts, each of which, when executed and delivered, shall be deemed an original, but all such counterparts together shall constitute but one and the same instrument.

31. **Notice.** Debtor shall, within one (1) business day following entry by this Court of this Stipulation and Approval Order, mail copies hereof, to the U.S. Trustee, counsel to Wells Fargo and to the entities listed on the Debtor's list of its twenty (20) largest non-insider unsecured creditors, all parties who appear or otherwise responded to the relief requested herein, and any other party that has filed a special request for notice with this Court and served such request upon Debtor's counsel.

DATED: August 26, 2014      HEMAR, ROUSSO & HEALD, LLP

By: _____
RAFFI KHATCHADOURIAN
Attorneys for Secured Creditor,
WELLS FARGO BANK, NATIONAL ASSOCIATION

DATED: August 26, 2014      SIMON RESNICK HAYES LLP

BY: _____
M. JONATHAN HAYES
Attorneys for BRAUN DEVELOPMENT GROUP, INC.
Debtor and Debtor-in-Possession

Case 2:14-bk-24711-ER    Doc 39    Filed 08/26/14    Entered 08/26/14 15:58:04    Desc
Main Document    Page 13 of 15

EXHIBIT A

Braun Development Group Inc. dba Artwear
Artwear
2014-2 month budget

|  | August | September |  |
|---|---:|---:|---:|
| Total Income (collections) | 200,000 | 260,000 | 460000 |
| **Cost of Goods Sold** | | | |
| Materials | | | |
|   Fabric | 34,347 | 20,000 | |
|   Treatment Materials-Sublimation | 3,000 | 3,000 | |
|   lace-Klauber | 1,761 | 500 | |
|   Freight In | | | |
| Labor | | | |
|   Salary-Production | 3,300 | 3,300 | |
|   Hourly-Production | 44,679 | 44,679 | |
|   Piecework-Production | 21,916 | 21,916 | |
|   Outside Services | | | |
| Prod Expenses | | | |
|   Sewing Supplies | 1,106 | 1,106 | |
|   Design Supplies | 330 | 330 | |
|   Labels & hangtags | 0 | 0 | |
|   Other Factory Supplies | 1,789 | 1,788 | |
|   Line Samples | 584 | 584 | |
|   Contract Labor | 0 | 0 | |
|   Power & Electricity | 2,600 | 2,600 | |
|   Natural Gas | 1,895 | 1,895 | |
|   Water | 1,561 | 1,561 | |
|   Sewerage | 360 | 360 | |
|   Printing Supplies | 703 | 703 | |
|   Shipping Supplies | 380 | 380 | |
|   R & M - Fac. Mach. & Equip. | 832 | 832 | |
|   Other Factory Supplies | 750 | 750 | |
| Total Cost of Goods Sold | 121,892 | 106,284 | 228176 |
| | | | 50% |
| Gross Profit | | | |
| Expenses | | | |
| General & Administrative | | | |
|   Rent-Factory Building | paid | 20,000 | |
|   General Liability Insurance | 188 | 188 | |
|   Depreciation-Fac.Mach.&Equip. | | | |
|   Payroll Tax Expenses | 7,785 | 7,785 | |
|   Worker's Compensation Ins. | 5,117 | 5,117 | |
|   Property Insurance | 617 | 617 | |
|   Auto Insurance | 88 | 88 | |
|   Life Insurance | 31 | 31 | |
|   Medical Insurace | 0 | 3,048 | |
|   Medical Services | 225 | 225 | |

|  |  |  |
|---|---:|---:|
| Salaries-Administration | 1,726 | 1,726 |
| Legal and Professional Fees | 1,800 | 10,000 |
| Trash&Landscaping Maintenance | 370 | 370 |
| R & M - Company Vehicles | 82 | 82 |
| Gas & Oil | 278 | 278 |
| R & M - Office Mach.&Equip. | 250 | 250 |
| Telephone, Fax, and Internet | 925 | 925 |
| Lease Expense |  |  |
| Office Supplies | 500 | 500 |
| Kitchen,Bath&Other Fctry.Supp. | 533 | 533 |
| Reg.,License,Permits & Dues |  |  |
| Property Tax | 358 | 358 |
| Business Tax | 250 | 250 |
| Franchise Tax | 139 | 139 |
| Alarm & Security Devices | 385 | 385 |
| Interest on Loan - BDG (WF) | on hold | on hold |
| photo shoot expenses | 3,220 |  |
|  |  |  |
| Selling, Shipping and Warehouse |  |  |
| Advertising&Publications | 300 | 300 |
| Travelling Expenses | 650 | 650 |
| Showroom Expenses | 0 |  |
| Freight Out | 725 | 725 |
| EDI Fees | 29 | 29 |
| Sales Commisssions | 3,958 | 3,958 |
| total | 30,528 | 55,508 |
| Other Charges |  |  |
| Deposit on new building | 20,000 |  |
| Moving expenses *est. |  | 30,000 |
| total | 20,000 | 30,000 |
|  |  |  |
| Other Income / Expense |  |  |
| Other Expense |  |  |
| Salaries-Officers | 12,000 | 12,000 |
| Franchise Tax | 139 | 139 |
| Total Other Expense | 12,139 | 12,139 |
|  |  |  |
| total Expenses | 188,569 | 207,931 |
|  |  |  |
| Adequate Protection Payments |  |  |
| WFB - First loan | 6,100.77 | 6,100.77 |
| WFB - second loan | 1,939.00 | 1,939.00 |
|  | 8,039.77 | 8,039.77 |